1999-NMCA-030

974 P.2d 1182

**Ronald A. SMITH, Worker–Appellant,**

v.

**CUTLER REPAVING and CNA Insurance Co., Employer/Insurer–Appellees.**

**No. 19,013.**

Court of Appeals of New Mexico.

Jan. 11, 1999.

Certiorari Denied, No. 25,581, Feb. 17, 1999.

Donald D. Vigil, Donald D. Vigil, P.C., Albuquerque, for Appellant.

Kimberly A. Syra, Hatch, Allen & Shepherd, P.A., Albuquerque, for Appellees.

OPINION

ARMIJO, Judge.

{1} Ronald A. Smith (Worker), challenges an administrative determination that he has reached maximum medical improvement (MMI) for his primary physical and secondary mental injuries resulting from a work-related injury. Worker makes two ar-

guments on appeal: (1) the MMI findings below are not supported by sufficient evidence; and (2) it was error to admit certain deposition testimony. For the reasons stated below, we affirm in part and reverse in part.

## FACTS AND PROCEEDINGS

{2} In 1993, while working for Appellee, Cutler Repaving (Employer), Worker caught his right ankle and foot under a heavy asphalt roller machine. Following the injury, Worker underwent several amputations, leaving him with a short, above-the-knee stump. Worker has since undergone extensive treatment, including subsequent surgeries, in an attempt to adjust to a prosthetic limb. As of July 30, 1997, Worker had not yet adjusted to the prosthetic. At the hearing, Worker testified to: fluctuating weight induced by related stress; sores and other damage to his leg resulting from attempts to use the prosthetic; and phantom pains and numbness in his good leg. His wife testified that the prosthetic quickly causes Worker to develop bloody blisters and that he has significant difficulty ambulating on the device. Worker has never adjusted to the use of his prosthetic limb.

{3} As of the hearing, Dr. Edward J. Atler had been treating Worker regarding his leg and adjustment to the prosthetic device for four years. While Dr. Atler had previously stated that "things seem to have settled down" and that "it seem[ed] that this situation has stabilized now in terms of the stump," he testified that as of July 30, 1997, he believed Worker had not reached MMI in regards to his physical injury. He further estimated that Worker retained a twenty percent chance of further recovery.

{4} The record also contains testimony from Dr. Brian P. Delahoussaye, a physician to whom Dr. Atler referred Worker for a determination of the extent of his physical impairment. At the time of his deposition, Dr. Delahoussaye had not seen Worker for approximately two years. However, Dr. Delahoussaye testified that when he examined Worker, on August 10, 1995, he "was under the impression" that Dr. Atler had already determined that Worker had reached MMI in regards to his physical injury.

{5} Worker has also experienced significant emotional problems resulting from his physical injuries. Since the accident, Worker has undergone psychological counseling and a regimen of anti-depressant medications, including Prozac, Paxil, and Serzone. In finding that Worker had reached MMI for his secondary mental impairment, the workers' compensation judge (WCJ) relied upon the report of Dr. Timothy S. Strongin. Specifically, the WCJ found compelling Dr. Strongin's opinion that Worker would reach MMI for his secondary mental impairment within six months of the resolution of litigation. This finding rests upon the WCJ's implied conclusion that Worker's continuing psychological dysfunction was caused not by his original physical injury, but by the litigation arising therefrom.

{6} However, Dr. Strongin appears to have equivocated as to whether Worker had reached MMI in regards to his secondary mental impairment. For example, while he concluded his report by stating that "[Worker] is found to be at maximum medical improvement for the period in which his case is adjudicated," he further opined that "[Worker] will probably experience significant additional improvement within six months after his case is finally settled." Furthermore, Dr. Strongin noted that: Worker's prognosis "is poor until his medical and legal situation is resolved"; Worker's "ongoing denial of loss is likely to inhibit psychotherapeutic progress"; and future counseling ought "to be problem-focused and specific, rather than merely supportive." Finally, Dr. Strongin testified at his deposition that "[a]t the time I saw him in September of 1996, his mental health condition appeared to be subject to change."

{7} The record contains additional evidence from other examining mental health providers indicating that Worker's mental condition was not "static and well stabilized." For example, on January 31, 1997, Dr. Edgar W. Waybright, a psychiatrist who treated Worker for "severe Post[-]traumatic Stress Disorder[,]" "Major Depression" and "possible Dementia," wrote Worker's attorney stating that Worker "has not reached maximum medical improvement with regard to the

mental/emotional disorders resulting from his work injury[.]" Dr. Waybright further testified by affidavit that Worker had not reached psychological MMI as of April 1997. The record also contains a statement from Worker's treating psychiatrist, Dr. Michael D. Muldawer, indicating that Worker had not reached psychological MMI as of April 1997. Dr. Barry L. Irons, a psychiatrist who saw Worker during the summer of 1997, noted in August that while Worker still suffered from major depression, he was "[b]enefitting from outpatient therapy." Finally, Dr. Thomas C. Thompson wrote to Worker's attorney in July 1997, to note that Worker "is clearly majorly depressed" and "needs considerable psychotherapeutic work in order to help him 1) accept the nature of the loss, which still has not occurred, and 2) begin to reorganize himself[.]"

{8} Upon this body of evidence, the WCJ found that Worker had reached MMI for both his primary physical and secondary mental impairments.

## STANDARD OF REVIEW

{9} In reviewing the WCJ's decision, we employ the whole record review. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.1988). "We must find 'evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.'" *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991) (quoting *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988)); *see also Herman*, 111 N.M. at 553, 807 P.2d at 738 (noting that while whole record review does not allow appellate court to reweigh evidence, it does afford court "greater latitude to determine whether a finding of fact was reasonable based on the evidence"); *Tallman*, 108 N.M. at 128, 767 P.2d at 367 ("Whole record review ... contemplate[s] a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result.").

## MAXIMUM MEDICAL IMPROVEMENT

{10} The central issue on appeal is whether the record contains sufficient evidence to support the WCJ's finding that Worker has reached MMI for his physical and secondary mental injuries. MMI is "the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider." NMSA 1978, § 52-1-24.1 (1990). Key to determining MMI is "expert medical testimony" regarding whether the injured worker "is more likely than not" to recover further. *Baca v. Bueno Foods*, 108 N.M. 98, 100, 766 P.2d 1332, 1334 (Ct.App.1988). We address each MMI finding separately. *Cf. Peterson v. Northern Home Care*, 1996–NMCA–030, ¶ 13, 121 N.M. 439, 912 P.2d 831 (finding that worker need not have current physical impairment to have a secondary mental impairment).

### (a) MMI for Worker's Primary Physical Impairment

{11} The only record evidence supporting Worker's contention of future improvement in regards to his physical injuries is Dr. Atler's deposition testimony. At deposition, Dr. Atler guardedly estimated that Worker had a twenty percent chance of future physical improvement. The only other testifying expert on this matter, Dr. Delahoussaye, believed Worker had reached his physical MMI as of 1995. The record further indicates that Worker's physical condition had not appreciably changed between Dr. Delahoussaye's examination in 1995 and Dr. Atler's last examination of the Worker on July 30, 1997. Accordingly, it was reasonable for the WCJ to conclude that Worker was not "more likely than not" to recover further. *Baca*, 108 N.M. at 100, 766 P.2d at 1334; *cf. Madrid v. St. Joseph Hosp.*, 1996–NMSC–064, ¶ 39, 122 N.M. 524, 928 P.2d 250 (noting that stability in worker's condition for several years supported reasonable conclusion that he had met physical MMI). We therefore hold that substantial evidence supports the WCJ's determination that Worker

achieved his physical MMI on September 4, 1996.

▮ {12} In so holding, we recognize that Worker continues to suffer from the physical repercussions of his traumatic injury, thus requiring further medical treatment. However, whether a worker has reached MMI turns on proof of a reasonable medical probability of future recovery and lasting improvement. *See Baca*, 108 N.M. at 101, 766 P.2d at 1335. Accordingly, the fact that Worker will need future medical care for his continuing disability is not inconsistent with our conclusion. *See Lane v. Levi Strauss & Co.*, 92 N.M. 504, 506, 590 P.2d 652, 654 (Ct.App.1979) ("The need for further medical treatment is not incompatible with the status of permanent disability.").

### (b) MMI for Worker's Secondary Mental Impairment

▮ {13} The primary basis for the WCJ's finding that Worker had reached MMI for his secondary mental impairment was Dr. Strongin's statement that Worker would reach MMI within six months of the conclusion of this litigation. For several reasons, we find the WCJ's reliance on Dr. Strongin's report unreasonable and reverse his determination.

{14} In relying on Dr. Strongin's report, the WCJ disregarded the report's internal inconsistencies. For example, while the doctor indeed concluded that "[Worker] is found to be at maximum medical improvement for the period in which his case is adjudicated," he states in the next sentence that "[Worker] will probably experience significant additional improvement within six months after his case is finally settled." Achievement of MMI is directly incompatible with such expert testimony that further improvement is a "reasonable medical probability." Section 52–1–24.1.

{15} Dr. Strongin's report also records his observations that Worker's denial of his loss "is likely to inhibit psychotherapeutic progress" and that future counseling should be aimed at resolving specific problems. Such statements are not consistent with a finding that further recovery is improbable.

Finally, at his deposition, Dr. Strongin testified that at the time of the examination, Worker's "mental health condition appeared to be subject to change." Read as a whole, Dr. Strongin's report and testimony indicate a probability of future psychological improvement, not a static and stabilized emotional state.

{16} Such a reading of Dr. Strongin's report and deposition testimony is consistent with substantial additional evidence in the record that Worker had not reached MMI for his secondary mental impairment. For example, Dr. Irons noted that Worker was "[b]enefitting from outpatient therapy," and Dr. Thompson wrote that Worker, in his opinion, "needs considerable psychotherapeutic work[.]" Upon our review of this evidence, we cannot affirm as reasonable the WCJ's finding that "Worker has reached a certain amount of stability" in regards to his secondary mental impairment; such a finding is not supported by substantial evidence.

{17} We also note that the WCJ's psychological MMI finding appears, at least in part, to be based on a lack of causation. In his order on Worker's motion to reconsider, the WCJ stated that "Worker's anxieties involve working with attorneys and the court system regarding his legal cases and do not arise out of the trauma causing the loss of his leg." In so concluding, the WCJ disregarded the virtually unanimous expert testimony on the issue. *See Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct.App.1986) (noting that uncontroverted expert medical testimony regarding causation is binding on the court).

{18} The only doubt raised regarding causation is Dr. Strongin's report. However, this report contains the doctor's observation that Worker's prognosis was "poor" until *both* his medical and legal difficulties are resolved. Furthermore, Dr. Strongin testified that he made no effort to assess Worker's emotional state in regards to his difficulty adapting to the loss of his leg or the use of a prosthetic limb. To the extent his testimony can be construed as opining that Worker's present emotional state results from or is related to his physical injury, he is without foundation. *Cf. Peterson*, 121 N.M. at 441,

912 P.2d at 834 ("[A] doctor's opinion is only as good as the facts upon which he or she bases it."). The uncontroverted medical evidence on this point, therefore, indicates that Worker's injuries stemming from the original accident include his continuing psychological dysfunction.

## DR. DELAHOUSSAYE'S TESTIMONY

**{19}** Worker also argues the WCJ should have excluded Dr. Delahoussaye's testimony regarding Worker's physical MMI. We find this argument to be without merit. Worker argues that Dr. Delahoussaye was not his "treating physician" within the meaning of the Workers' Compensation Act. *See* NMSA 1978, § 52-1-51(C) (1990) (providing that "[o]nly a health care provider who has treated the worker" can provide expert medical testimony). Dr. Delahoussaye is a "health care provider," as defined by the Act. *See* NMSA 1978, § 52-4-1(A) (1993) (defining "health care provider"). Moreover, he examined Worker at Dr. Atler's request for the express purpose of determining the degree of Worker's physical impairment. Accordingly, Dr. Delahoussaye was, for purposes of this statute, Worker's treating physician. *See* 11 NMAC 4.4.11.4.1 (1996) ("A referral by an authorized HCP [health care provider] to another HCP shall be deemed a continuation of the selection of the referring HCP."). The WCJ therefore committed no error in admitting his testimony.

## CONCLUSION

**{20}** For the reasons given above, we affirm the WCJ's determination that Worker reached physical MMI on September 4, 1996, but reverse the WCJ's finding that Worker reached psychological MMI on that date. This matter is therefore remanded for proceedings consistent with this opinion.

**{21}** **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.