This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JUDY ROMERO,**

     Worker-Appellant,

v.                                 **NO. 28,931**

**JOHN BROOKS VALUE WAY and
FOOD INDUSTRY/SELF INSURANCE FUND
OF NEW MEXICO,**

     Employer/Insurer-Appellees.

**APPEAL FROM WORKERS' COMPENSATION ADMINISTRATION**
**Helen L. Stirling, Workers' Compensation Judge**

Bogardus & Scott, Attorneys at Law, P.C.
Robert L. Scott
Albuquerque, NM

Joshua A. Spencer
Albuquerque, NM

for Appellant

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Max J. Madrid
H. Jesse Jacobus III
Albuquerque, NM

for Appellees

# MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Judy Romero (Worker) appeals from a workers' compensation order denying her claims for benefits. Worker argues: (1) that she was entitled to temporary total disability benefits because John Brooks Value Way (Employer) failed to formally extend a return-to-work offer, and (2) that the WCJ erred by not accepting the testimony of Dr. Richard Weber regarding Worker's maximum medical improvement and impairment rating. The WCJ's findings on both issues are supported by substantial evidence and we affirm.

## BACKGROUND

Worker injured her back while stocking liquor shelves for Employer in September 2006. In the days following her injury, Worker saw Dr. Gordon Eatman, a chiropractor, and also made a trip to the emergency room for treatment. Worker was diagnosed with a back strain and taken off work from September 14 to September 17, and allowed to return to work with restrictions through September 24. Before returning to work, Worker took vacation leave for one week, subsequently returned to work for two days, and then on or about September 30, 2006, she determined that she could not continue working and never again returned to work.

In February 2007 Worker filed a complaint with the Workers' Compensation Administration seeking temporary total disability (TTD), permanent partial disability (PPD), medical benefits, and attorney fees. After a trial on the merits, the WCJ awarded Worker medical benefits for the treatment of her injuries and her past medical bills only. The WCJ concluded that Worker was not entitled to TTD because she had no medical reason to stop coming to work after September 30, 2006. The WCJ also concluded that Worker was not entitled to PPD because there was no credible evidence to determine whether Worker reached maximum medical improvement (MMI) or that Worker has any permanent impairment rating attributable to her injury.

**STANDARD OF REVIEW**

"In reviewing the WCJ's decision, we employ the whole record review." *Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 9, 126 N.M. 725, 974 P.2d 1182. "[W]e review the whole record to determine whether there is substantial evidence to support the WCJ's findings." *Henington v. Technical-Vocational Inst.*, 2002-NMCA-025, ¶ 19, 131 N.M. 655, 41 P.3d 923. "In making this determination, we view the evidence in the light most favorable to the finding below." *Id.* "The question is whether, viewed in the light of the whole record, the finding is reasonable." *Id.* "[T]he trial court is in a better position [than is an appellate court] to judge the credibility of

witnesses and resolve questions of fact." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 33, 143 N.M. 215, 175 P.3d 309 (alterations in original).

**DISCUSSION**

**1.      Substantial Evidence Supports the WCJ's Findings that Worker is not Entitled to TTD.**

Under NMSA 1978, Section 52-1-25.1(B) (2005), a worker is not entitled to TTD benefits if after a worker is released to go back to work and the employer offers work at the worker's pre-injury wage prior to the date of MMI. Although Worker did return to work shortly after her injury, Worker argues that this section required Employer to extend a formal offer to Worker and that because Employer did not, she was entitled to TTD.

Substantial evidence supports the WCJ's conclusion that Worker was effectively offered to return to work. Worker's deposition testimony was she did in fact return to work for Employer for two days, and then voluntarily stopped coming to work even though no health care professional had taken Worker off work other than for the few days following her injury. The WCJ found this evidence sufficient to infer that Worker was offered to return to work. Worker cites no authority to suggest that in addition to being allowed to return to work regular shifts without objection or condition by Employer, that Employer was required to also formally request that Worker return. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-

5

NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority). The evidence that Worker returned to work without incident and voluntarily stopped coming to work is sufficient to conclude that the intent of Section 52-1-25.1, with respect to "the employer offer[ing] work," was satisfied. *See Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) (stating that substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion). Accordingly, we affirm the findings of the WCJ that Worker was not entitled to TTD.

**2. Substantial Evidence Supports the WCJ's Findings that Worker is not Entitled to PPD.**

Under NMSA 1978, Section 52-1-26(B) (1990), a worker may be entitled to PPD when the worker suffers a permanent impairment. Dr. Richard Weber provided the only medical testimony relating to Worker's MMI and impairment rating. Worker argues that, pursuant to the so-called uncontradicted medical evidence rule, the WCJ was required to accept Dr. Weber's uncontradicted testimony as proof of the date of Worker's MMI and impairment rating, even where the WCJ found that Dr. Weber's testimony lacked credibility.

Worker cites *Hernandez v. Mead Foods, Inc.*, 104 N.M. 67, 70, 716 P.2d 645, 648 (Ct. App. 1986), *limited on other grounds by Graham v. Presbyterian Hospital Center*, 104 N.M. 490, 492, 723 P.2d 259, 261 (Ct. App. 1986), for the proposition

6

that the uncontradicted medical evidence rule "is an exception to the general rule that a trial court can accept or reject expert opinion as it sees fit." Regardless of the statement in *Hernandez* that this "exception to the general rule only appl[ies] to the causation issue," *id.*, Worker argues that the rule should be extended to also apply to the MMI and impairment rating components of the PPD section.

Contrary to Worker's argument, the WCJ was not required to accept Dr. Weber's impairment rating or MMI testimony. The case of *Peterson v. Northern Home Care*, 1996-NMCA-030, 121 N.M. 439, 912 P.2d 831, addressed an identical issue. There, we recognized that even if the uncontradicted evidence rule was analogous to issues of impairment, there are exceptions which allow a WCJ to reject a purported impairment rating. *Id.* ¶ 10. Specifically,

> [u]ncontradicted testimony need not be accepted as true if (1) the witness is shown to be unworthy of belief, or (2) his testimony is equivocal or contains inherent improbabilities, (3) concerns a transaction surrounded by suspicious circumstances, or (4) is contradicted, or subjected to reasonable doubt as to its truth or veracity, by legitimate inferences drawn from the facts and circumstances of the case.

*Hernandez*, 104 N.M. at 70-71, 716 P.2d at 648-49. In *Peterson,* we affirmed the AC's conclusion that the uncontradicted testimony as to impairment rating was found to be unworthy of belief and that the WCJ was justified in finding no impairment. *Peterson*, 1996-NMCA-030, ¶ 10.

7

Here, the WCJ found that Dr. Weber's testimony as to MMI was equivocal and unworthy of belief because it was stated as a probability and only after being "lead to agree" that Worker's MMI coincided with the date of his deposition. When Dr. Weber was asked whether Worker had reached MMI he responded, "I think she's getting there . . . you know, who knows what MMI is in these kinds] of cases. You know, it's really tough to say . . . we just haven't found it." Dr Weber was asked whether Worker would reach MMI in two weeks, and his response indicated that it was unclear what exactly Worker was suffering from. Dr. Weber was later told "[j]ust so I'm clear with the judge . . . [t]oday . . . she is not at MMI?" to which Dr. Weber finally responded, "if you want to set a time, we'll say that she's at MMI at this point." Worker relies on this last statement as uncontradicted evidence that worker reached MMI during this point in Dr. Weber's testimony. However, in light of the circumstances, the WCJ was justified in rejecting Dr. Weber's testimony as to MMI based on the equivocal nature of the testimony and the inferences of reasonable doubt as to its truth or veracity that can be reasonably drawn.

The WCJ also found that Dr. Weber's testimony as to Workers' impairment rating was similarly unworthy of belief. When asked about Worker's impairment rating, Dr. Weber testified "the problem is an objective finding . . . it's very vague . . . I don't have anything, right at this point, that I would say is an impairment rating."

8

"I probably could [assign an impairment rating] I just don't do that much anymore." Dr. Weber also testified that in order to determine if Worker should be limited to some maximum lifting capacity at work that he would "defer . . . to a functional capacity assessment . . . that would be more objective than for me to just put a number on it." Later, Dr. Weber stated that Worker's impairment rating would probably be in the realm of five to eight percent. We again conclude that, based on the equivocal nature of Dr. Weber's overall testimony on this issue, and the inferences of reasonable doubt that may be drawn from the circumstances, that the WCJ was justified in rejecting his testimony as to Worker's impairment rating.

There was additional evidence that cast doubt on Worker's impairment rating. Worker does not challenge the WCJ's findings that Worker's consistent, objective diagnosis has been that, "not much, if anything, is wrong" with Worker. Based on this, and the nature of Dr. Weber's testimony, the WCJ was justified in discounting Dr. Weber's testimony as to MMI and impairment rating and finding that Worker had no physical impairment justifying PPD. *See Peterson*, 1996-NMCA-030, ¶ 10.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the WCJ.

**IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

**CELIA FOY CASTILLO, Judge**

**LINDA M. VANZI, Judge**