This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**LEROY GALLEGOS,**

Worker-Appellee,

v. NO. 32,751

**OWENS & MINOR, INC.,
and INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA,**

Employer/Insurer-Appellants.

**APPEAL FROM THE NEW MEXICO WORKERS' COMPENSATION ADMINISTRATION
David L. Skinner, Workers' Compensation Judge**

Mark Jarner
Los Lunas, NM

for Appellee

Paul L. Civerolo, L.L.P.
Paul L. Civerolo
Albuquerque

for Appellants

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}     Appellants Employer Owens & Minor, Inc. and Insurer Indemnity Insurance Company of North America (Employer) appeal from the Workers' Compensation Judge's ruling that Appellee Leroy Gallegos (Worker) is entitled to payment of 86% permanent partial disability (PPD) benefits, which includes eight modification points for his physical capacity, one modification point for his training, and three modification points for his skills. [RP 172, 174] In our notice of proposed summary disposition, we proposed to affirm. Employer has filed a memorandum in opposition and Worker has filed a memorandum in support of the proposed disposition, both of which this Court has duly considered. We do not find Employer's arguments persuasive, and therefore, we affirm.

**Motion to Amend**

{2}     In the docketing statement, Employer asked this Court to determine whether the WCJ erred in calculating Worker's physical capacity, training, and skills modification points. [DS 14-15] In the context of the procedural posture, the docketing statement also mentioned issues that were raised before the WCJ, including the date of maximum medical improvement (MMI) and whether Worker was entitled to modifier enhancements for PPD benefits because Worker had submitted a letter of resignation, dated November 17, 2010, to Employer indicating that his last day of employment

2

with Employer would be January 7, 2011. [DS 2-3; RP 107-11, 134-43] Employer did not present these issues as issues on appeal; therefore, this Court did not address the MMI issue in the proposed calendar notice, and we only briefly addressed the resignation issue because it is relevant to Worker's award of modifiers. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that to present an issue on appeal for review, a party must submit argument and authority). [DS 14-15; *see also* DS 3]

{3} Our calendar notice proposed to affirm Worker's award of modifiers. [CN 12] Worker filed a memorandum in support, which addresses the MMI and resignation letter issues, in addition to the award of modifier benefits. [MIS 3-13] Subsequently, Employer filed a memorandum in opposition, which states that Employer is appealing: (1) the date of MMI; (2) whether Worker was entitled to modifier enhancements for PPD benefits because Worker had submitted a letter of resignation before he was injured; and (3) the specific calculations of modifier enhancements for PPD benefits if Worker was entitled to enhancements. [MIO 2-3]

{4} We construe Employer's arguments that the WCJ erred in determining the date of MMI and the effect of Worker's resignation letter as new issues because Employer did not list them as issues in his docketing statement or provide any authorities that might have indicated they were issues Employer sought to raise. *Cf. State v. Fuentes*,

3

2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (explaining that this Court does not review unclear or undeveloped arguments). Nevertheless, Employer did not move to amend the docketing statement to add these issues. *See* Rule 12-208(F) NMRA (permitting the amendment of the docketing statement based on good cause shown); *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309 (setting out requirements for a successful motion to amend the docketing statement).

{5}     We need not address the issues. Nevertheless, if we were to construe the memorandum in opposition as a motion to amend, we would deny the motion because the issues are not viable. The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are: (1) that the motion be timely, (2) that the new issue sought to be raised was either (a) properly preserved below or (b) allowed to be raised for the first time on appeal, and (3) that the issues raised are viable. *See State v. Moore*, 1989-NMCA-073, ¶ 42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730. Employer has failed to demonstrate that it meets the requirements for granting a motion to amend, including the requirement that the issue must be viable. *See id.* ("By viable, we meant to describe an argument that was colorable, or arguable, and to distinguish arguments that are devoid of any merit.").

4

{6} We review workers' compensation cases under a whole record standard of review. *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. In conducting our review, we defer to the expertise of the administrative judge and "[w]e will not . . . substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734.

{7} In this case, Worker had a nerve ablation procedure—a facet radio-frequency neurotomy at the L3, L4, and L5 levels on the right side of Worker's lumbar spine—on April 20, 2011. [RP 135, 138, 167] Dr. Zuniga performed the procedure, discharged Worker on the same day, and instructed Worker to return to Dr. Zuniga's pain clinic in three months or earlier, if necessary. [RP 138, 167] Worker testified that he returned to the pain clinic approximately three months later and in three-month intervals thereafter. [RP 139, 168] Dr. Zuniga continued to prescribe Hydrocodone and Gabapentin to Worker to relieve his pain. [RP 168]

{8} On November 10, 2011, Dr. Garcia and Dr. Patterson met with Worker for an independent medical evaluation (IME). [RP 110-11, 135, 167] They determined that Worker had reached MMI as of that date. [RP 111, 135, 137, 167, 168] According to Employer, Dr. Garcia testified at her deposition that she did not give Worker an earlier

MMI date because no other health care provider had documented that Worker was pain free until the IME. [RP 137, 140]

**{9}** Employer asserts that the medical records and undisputed testimony established that Worker experienced immediate and significant improvement after his nerve ablation procedure on April 20, 2011; therefore, "Worker's date of MMI should have been approximately the date of the ablation procedure or shortly thereafter, well before the IME." [MIO 4] Worker, on the other hand, asserts that the only health care providers that testified regarding the date of MMI were Dr. Garcia and Dr. Patterson in their IME report, and these health care providers determined the date of the MMI was November 10, 2011. [MIS 3-4]

**{10}** Pursuant to NMSA 1978, Section 52-1-24.1 (1990), a health care provider must determine the date of MMI. *See Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 10, 126 N.M. 725, 974 P.2d 1182 ("Key to determining MMI is 'expert medical testimony' regarding whether the injured worker 'is more likely than not' to recover further."). Both Dr. Garcia and Dr. Patterson agreed that Worker reached MMI on November 10, 2011, and Employer does not assert that another health provider offered a different opinion. Even if that were the case, the WCJ is "responsible for resolving any conflicts in medical testimony as to the date of MMI." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 39, 122 N.M. 524, 928 P.2d 250; *see also Easterling v.*

*Woodward Lumber Co.*, 1991-NMCA-036, ¶ 19, 112 N.M. 32, 810 P.2d 1252 ("In making a whole record review, it is not a function of this court to reweigh the evidence."). Therefore, there was substantial evidence to support the WCJ's decision that Worker's date of MMI was November 10, 2011. Because Employer's arguments are not viable, we deny Employer's motion to amend with respect to the date of MMI.

{11} Similarly, Employer's argument regarding Worker's resignation letter lacks merit. Even though Employer did not develop this argument in his docketing statement, we addressed this issue in our calendar notice. [CN 6-7] We proposed to disagree with Employer that Worker was not entitled to an award of modifiers because he "had effectively resigned or retired and was voluntarily removing himself from the work-force before the injury occurred." [DS 3; CN 6-7]

{12} As we discussed in our proposed disposition, Worker's accident occurred while he was still working for Employer, and there was testimony that Worker intended to find another job that required less physical exertion upon his resignation from Employer. [CN 7] We proposed to conclude that Worker was entitled to modifier enhancements for PPD benefits, despite the fact that he had submitted a letter of resignation to Employer prior to the date he was injured. [CN 6-7, 12] In support of this conclusion, we relied on *Cordova v. KSL-Union*, 2012-NMCA-083, ¶¶ 2-3, 25, 285 P.3d 686, in which this Court held that the worker was entitled to modifier-based

7

PPD benefits even though she had begun paperwork and preparations for retirement before she was injured on the job, *cert. denied*, 2012-NMCERT-007, 295 P.3d 599.

**{13}** We are not persuaded by Employer's argument that the facts in this case are distinguishable from those in *Cordova*. [MIO 5] Likewise, we are not persuaded that Worker's testimony regarding finding another job was "self-serving speculation." [CN 6] *See Moya*, 2008-NMSC-004, ¶ 6 (stating that it is for the WCJ as the fact finder to assess credibility and weigh the evidence). Because we are not persuaded that Worker voluntarily removed himself from the work-force, we conclude that he was entitled to modifier enhancements for PPD benefits and that this issue is also not viable.

**Physical Capacity Points**

**{14}** In this Court's calendar notice, we addressed Employer's arguments that the WCJ erred in determining that Worker's usual and customary work required "heavy" physical capacity instead of "medium" physical capacity, and the WCJ erred in awarding Worker eight modification points based on the difference between his usual and customary work physical capacity of "heavy" and his residual physical capacity of "sedentary." [DS 14-15] Applying a whole record standard of review, we proposed to conclude that there was substantial evidence to support the WCJ's decision that Worker's usual and customary work required "heavy" physical capacity. [CN 2-6]

Similarly, we proposed to conclude that Worker was entitled to eight modification points for his physical capacity. [CN 6-7]

{15} "Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law." *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683. Instead of pointing out errors of law or fact, Employer's memorandum in opposition reiterates his previous arguments. *See State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that a party responding to a summary calendar notice must come forward and specifically point out errors of law and fact, and the repetition of earlier arguments does not fulfill this requirement), *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, 297 P.3d 374.

{16} As a result, we affirm the WCJ's determination that Worker's usual and customary work required "heavy" physical capacity, and we affirm Worker's award of eight modification points for his physical capacity.

**Training Point (Specific Vocational Pursuit)**

{17} In this Court's calendar notice, we proposed to affirm the WCJ's ruling that Worker was entitled to one training point because Worker could not "competently perform a specific vocational pursuit." *See* NMSA 1978, § 52-1-26.3(D) (2001). [CN 7-9] We explained that Worker was not able to competently return to driving rental

cars, which is a "light" job, because his residual physical capacity was "sedentary" and he was taking narcotic pain medication on a daily basis. [CN 8] *See Medina v. Berg Constr., Inc.*, 1996-NMCA-087, ¶¶ 22-23, 122 N.M. 350, 924 P.2d 1362 (interpreting "competently" to include "requisite physical, mental, natural or legal qualifications" and determining that the worker could not competently return to work as a truck driver, which was considered to be a "medium" job, because his residual physical capacity was classified as "light" ).

{18}     In its memorandum in opposition, Employer argues that Worker could have returned to work as a rental car or shuttle driver because Worker's physicians did not restrict his ability to drive. Worker could legally drive and he had already been trained for this type of work. [MIO 14-17] Employer minimizes Worker's daily reliance on pain medications, which made him drowsy, by stating that Worker "calls attention to his habit of napping each afternoon, something he attributes to his medication." [MIO 14-15; RP 113, 172]

{19}     The fact that Worker must take narcotic medication to relieve his pain is not insignificant, and the WCJ determined that this was sufficient to demonstrate that Worker could not competently return to driving as an occupation. [RP 172] Under our whole record standard of review, we do not disturb the WCJ's assessment of the evidence and of Worker's credibility. *See Easterling*, 1991-NMCA-036, ¶ 19.

Accordingly, we affirm the WCJ's determination that Worker is entitled to one modification point for his training.

**Skills Points (Specific Vocational Preparation)**

{20}     Employer continues to argue that there was not substantial evidence to support the WCJ's determination that the highest specific vocational preparation (SVP) level demonstrated by Worker over the last ten years of his employment was a four, entitling him to three skills points. [MIO 18-21; DS 15] *See* Section 52-1-26.3(C). Employer asserts that, based on the evidence below, Worker's highest SVP rating was at least a five or six, which made him eligible for only two points. [MIO 19-21; DS 11-12] We addressed these issues in detail in our proposed disposition and proposed to affirm. [CN 9-12]

{21}     "A party opposing summary disposition is required to come forward and specifically point out errors in fact and/or law." *State v. Ibarra*, 1993-NMCA-040, ¶ 11, 116 N.M. 486, 864 P.2d 302. Employer did not point out any errors in fact or law in response to our calendar notice. To the extent that Employer is asking this Court to reweigh the evidence presented below, we will not do so. *See DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341 ("Substantial evidence on the record as a whole is evidence demonstrating the

reasonableness of [the WCJ's] decision, and we neither reweigh the evidence nor replace the [factfinder's] conclusions with our own." (citation omitted)).

**{22}**     Therefore, we affirm Worker's award of three modification points for his skills.

**Conclusion**

**{23}**     For the reasons stated in this opinion and in our notice of proposed summary disposition, we affirm.

**{24}**     **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**J. MILES HANISEE, Judge**