This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**KATHY BLAKELY,**

    Worker-Appellant,

**v.**                                    **No. A-1-CA-35889**

**LOVELACE HOSPITAL and**
**HARTFORD INSURANCE**
**COMPANY OF THE MIDWEST,**

    Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Dunn Law Offices
Rod Dunn
Rio Rancho, NM

for Appellant

Camp Law, LLC
Minerva Camp
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Worker Kathy Blakely appeals from the September 1, 2016, Workers' Compensation Judge's (WCJ) compensation order awarding her temporary total disability (TTD) benefits from April 17, 2015, to January 29, 2016, following an accident she suffered at work. Worker contends that the WCJ's order—specifically its findings and conclusions regarding the date Worker reached maximum medical improvement (MMI) for her work-related right hip injury and the overall compensability of that injury—is not supported by substantial evidence. Concluding that the whole record does not support the WCJ's ruling, we reverse and remand for further proceedings.

**BACKGROUND**

{2}     On April 17, 2015, Worker, a registered nurse employed by Lovelace Hospital (Employer), was injured in a work-related accident when a patient she was assisting grabbed her arm and pulled her down, causing Worker to hit her right hip and lower back on a toilet. Worker experienced immediate pain in her right hip and back and was referred by Employer to Concentra Medical Center, where she was seen by Dr. David Lyman. Worker received medical treatment and care from various providers, including Dr. Lyman, Dr. Evan Knaus, and Dr. Arnold Kiburz, in the months following the accident and was eventually taken off of work

2

completely by Dr. Lyman on June 30, 2015, based upon her complaints of worsening pain.

{3}     On January 25, 2016, Employer filed a complaint with the Workers' Compensation Administration (WCA) seeking a determination of compensability and benefits, a suspension or reduction of benefits, and a credit for overpayment. Employer filed the complaint "in the interest [of] . . . see[ing] whether Worker's injuries have reached [maximum medical improvement (MMI)]" and indicated that it was "contemplat[ing] whether a six month re[]evaluation[] with Dr. Lyman . . . would be helpful to assess Worker's achievement of MMI." Employer alternatively posited that an independent medical examination (IME) "may be helpful to allow an objective provider . . . to give clinical opinions on treatment recommendations and achievement of MMI." Neither a reevaluation by Dr. Lyman nor an IME ever occurred.

{4}     At the trial held on August 15, 2016, the depositions of Drs. Lyman and Knaus—the only treating physicians of Worker who were deposed—were admitted into evidence. Also admitted were medical records from various physicians and a form letter to health care provider completed by Dr. Kiburz.

{5}     In its compensation order, the WCJ first found that Worker "suffered an on-the-job accident on April 17, 2015" in which she "injured her low back and right hip." Regarding Worker's right hip, the WCJ found that "Worker suffered a

3

pre[]existing right hip injury" and that she "did not suffer problems to her right hip other than a temporary exacerbation" of that preexisting injury. The WCJ additionally found that "Worker reached [MMI]" for the right-hip-exacerbation injury "with no permanent impairment[,]" but provided no specific date of MMI for that injury. The WCJ separately found that "Worker reached [MMI] for all conditions no later than January 29, 2016." The WCJ also found that "[t]he opinion of Dr. Kiburz . . . is that Worker's current right hip complaints are not causally related to the . . . work accident[,]" an opinion that the WCJ "accepted." From the foregoing, the WCJ concluded that Worker "is not entitled to additional benefits for her right hip." Worker appealed.

**DISCUSSION**

{6}     Neither party challenges the WCJ's determination of benefits with respect to Worker's back-related injury.[1] Thus, the only issue we address in this appeal is whether the record supports the WCJ's findings and conclusions regarding the compensability of Worker's right hip injury.

{7}     Worker argues that substantial evidence does not support the WCJ's findings that (1) Worker had a preexisting right hip injury, (2) the only injury to the right hip that Worker suffered was a temporary exacerbation of her preexisting injury,

---

[1]To the extent we discuss issues and evidence related to Worker's back injury, we do so only to provide context for our analysis of the compensability of Worker's right hip injury.

4

and (3) Worker had reached MMI for that injury. Worker, therefore, contends that the WCJ's conclusion that Worker is entitled to no additional benefits for her right hip injury cannot be sustained. We agree with Worker that the WCJ's ruling regarding Worker's right hip is, on the whole, unsupported, requiring reversal and remand.

**Standard of Review**

{8}  "We review workers' compensation orders using the whole record standard of review." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177. "In applying whole record review, this Court reviews both favorable and unfavorable evidence to determine whether there is evidence that a reasonable mind could accept as adequate to support the conclusions reached by the fact[-]finder." *Levario v. Ysidro Villareal Labor Agency*, 1995-NMCA-133, ¶ 15, 120 N.M. 734, 906 P.2d 266. While "this Court is not empowered to choose between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*," *Trujillo v. Los Alamos Nat'l Lab.*, 2016-NMCA-041, ¶ 45, 368 P.3d 1259 (internal quotation marks and citation omitted), *cert. denied*, 2016-NMCERT-___, (No. S-1-SC-35805, Apr. 7, 2016), an administrative agency's findings "must . . . be set aside when the record before the reviewing court precludes the agency's decision from being justified by a fair estimate of the worth of the testimony of witnesses[.]" *Tallman v. ABF*

5

*(Arkansas Best Freight)*, 1988-NMCA-091, ¶ 16, 108 N.M. 124, 767 P.2d 363 (internal quotation marks and citation omitted). We will set aside a workers' compensation judge's findings of fact only if "they are shown to be clearly erroneous or not supported by requisite evidence." *St. Clair v. Cty. of Grant*, 1990-NMCA-087, ¶ 30, 110 N.M. 543, 797 P.2d 993.

{9}     "The reviewing court starts out with the perception that all evidence, favorable and unfavorable, will be viewed in the light most favorable to the agency's decision." *Tallman*, 1988-NMCA-091, ¶ 18. "This would, however, not preclude the court from setting aside the agency decision when it cannot conscientiously say that the evidence supporting the decision is substantial, when viewed in the light that the whole record furnishes." *Id*. "To determine whether a finding of fact is amply supported by the whole record, we do not rely solely on one part of the evidence if to do so would be unreasonable." *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734. "We must find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Id*. (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision." *Begay v. Consumer Direct Pers. Care*, 2015-NMCA-025, ¶ 6, 344 P.3d 1083 (alteration, internal quotation marks, and citation omitted).

**Whether the Evidence Supports the WCJ's Finding That Worker's Right Hip Injury Was a "Temporary Exacerbation" of a Preexisting Injury**

{10}     The WCJ found that "Worker suffered a pre[]existing right hip injury[,]" a finding that Worker challenges as unsupported by the evidence. As the record reflects, Worker testified at trial that she suffered a labral tear of her right hip in 2005 that was repaired through arthroscopy surgery. Worker's previous right hip surgery is documented throughout the record, including in the treatment notes of Dr. Lyman. In challenging the evidence supporting the finding of a preexisting right hip injury, Worker points to what she describes as "the uncontradicted evidence [showing] that [she] had no pain, problems, or limitations relative to her right hip in the days, months, and years prior to the April 17, 2015 work-related accident." It is true that Worker testified that following the 2005 surgery, she experienced no problems "with right hip pain at all" and that she was never placed on work restrictions as a result of her prior hip injury. But simply because Worker was not experiencing problems with, or pain in, her right hip and was under no work restrictions following her successful surgery in 2005 does not render the WCJ's finding of a preexisting right hip injury unsubstantiated. The WCJ's finding that Worker had a preexisting injury to her right hip is supported by substantial evidence. That finding, however, addresses but a threshold issue related to the WCJ's separate finding that Worker suffered only a temporary exacerbation of that

7

preexisting injury. Whether *that* finding is supported by the record is a separate matter entirely, to which we next turn.

{11}  While Dr. Knaus, who had treated Worker in 2012 for back-related problems, described the injury to Worker's *back* as an "exacerbation" of a preexisting condition, none of Worker's health care providers stated or were asked whether Worker's post-accident right hip complaints arose from a "temporary exacerbation" of a preexisting condition. Rather, each diagnosed her with various new injuries: Dr. Lyman, a "contusion of the right hip . . . indicative of a trauma"; and Drs. Knaus and Kiburz, a right hip labral tear. Indeed, Dr. Knaus specifically noted that his prior treatment of Worker involved only her back, and he described Worker's "right[-]side hip and groin complaints" in 2015 as "new[.]" And while Dr. Kiburz additionally diagnosed Worker with right hip osteoarthritis—a condition that he opined, via his form letter, was not caused by the April 2015 work accident, i.e., was preexisting—that diagnosis indicates little, if anything, about whether Worker's work-related injuries were limited solely to an exacerbation of a preexisting right hip condition.

{12}  While undoubtedly possible that some of Worker's post-accident right hip pain could be described as indicating an exacerbation of Worker's prior right hip injury, the WCJ's order provides no explanation of the evidence that supports its finding that Worker suffered *only* a "temporary exacerbation" injury. *See Sanchez*

8

*v. Zanio's Foods, Inc.*, 2005-NMCA-134, ¶ 70, 138 N.M. 555, 123 P.3d 788 (explaining that "WCJ clarity and expressed reasoning is essential to our effective and meaningful review"). Moreover, on appeal, Employer points to no jurisprudence that would permit such a conclusion to be reached based solely upon the known existence of a prior injury or an existing arthritic condition. On the whole record, we conclude that the WCJ's finding that Worker suffered only a "temporary exacerbation" of her right hip injury is unreasonable as it is supported nowhere in the record. However, even assuming, arguendo, that Worker suffered only an exacerbation injury, the WCJ's order must nevertheless be reversed because there is no evidence that Worker has reached MMI for that injury, as we next explain.

**Whether the Evidence Supports a Finding That Worker Had Reached MMI for Her Right Hip**

{13}    As defined in the Workers' Compensation Act, MMI "means the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider[.]" NMSA 1978, § 52-1-24.1 (1990). The determination of MMI is important because "[e]ligibility for the various temporary benefits provided under the [Workers' Compensation] Act ends at the date of MMI." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 7, 122 N.M. 524, 928 P.2d 250. TTD benefits, at issue in this case, are available to a worker only from the time the

9

inability to work arises until the worker is declared to have reached MMI. *See* NMSA 1978, § 52-1-25.1(A) (2017). "Key to determining MMI is expert medical testimony regarding whether the injured worker is more likely than not to recover further." *Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 10, 126 N.M. 725, 974 P.2d 1182 (internal quotation marks and citation omitted). There must be some evidence that the worker "has reached a plateau of medical stability for the foreseeable future." *Rael v. Wal-Mart Stores, Inc.*, 1994-NMCA-017, ¶ 14, 117 N.M. 237, 871 P.2d 1. Where an expert's uncontradicted testimony, read as a whole, suggests a probability of future improvement rather than the achievement of a static, stable state, a finding that MMI has been reached is unsupported. *Cf. Smith*, 1999-NMCA-030, ¶¶ 15-16 (explaining, in a case involving a secondary mental impairment, that where an expert's report and testimony, "[r]ead as a whole, . . . indicate a probability of future psychological improvement, not a static and stabilized emotional state[,]" and where other doctors opined that the worker was "benefitting from outpatient therapy" and "needs considerable psychotherapeutic work[,]" the workers' compensation judge's finding that the worker had reached MMI was "not supported by substantial evidence" (alteration, internal quotation marks, and citation omitted)).

{14}     Here, the evidence bearing on MMI was in the form of (1) Dr. Lyman's deposition testimony, (2) Dr. Knaus's deposition testimony, and (3) Dr. Kiburz's

10

form letter. We consider each source separately to determine whether any supplied the necessary evidence to support the WCJ's finding that Worker had reached MMI "for all conditions no later than January 29, 2016."

{15} Dr. Lyman testified that as of June 30, 2015, the last date on which he treated Worker, he had *not* placed Worker at MMI for any of the injuries—hip- or back-related, or whether characterized as "exacerbation" or separate, new injuries—for which he treated Worker following the work accident. In response to questioning by Employer, he specifically explained, "[MMI] means that you have reached as good as you're going to get as a result of the injury." Dr. Lyman's testimony and medical records evince that Worker's condition not only did not stabilize or plateau but in fact steadily worsened during the time he treated her. One indicator of Worker's worsening condition was that Dr. Lyman, who initially released Worker to return to work with certain modifications and restrictions, continued to increase those restrictions due to Worker's "continued level of disability and discomfort" and eventually took Worker off of work completely due to her complaints of worsening pain. As of June 2015, Dr. Lyman "felt that [Worker] needed more treatment[,]" specifically physical therapy and physiatry. He explained that he does not "place someone at [MMI] until everything has been tried" and, noting that his records lacked "evidence that everything has been tried[,]" stated, "It was my opinion that she had not reached [MMI]." Dr. Lyman's

11

testimony thus fails to supply evidence in support of the WCJ's finding regarding MMI.

{16}  Dr. Knaus, for his part, first saw Worker in July 2015. At that time he recommended that she "undergo[] further diagnostic evaluation of the right hip" and referred her to Dr. Kiburz, a hip specialist, believing that Worker's hip pain could be "help[ed]." In August 2015 Dr. Knaus performed an inter-articular injection on Worker's right hip, believing that Worker would "see further recovery from or lasting improvement to her right hip complaints if she underwent th[e] injection." When Worker did not receive lasting improvement benefit from the injection, Dr. Knaus referred Worker back to Dr. Kiburz for additional consultation. In December 2015, when Worker reported to Dr. Knaus that her follow-up appointment with Dr. Kiburz had been "canceled by her adjuster," Dr. Knaus and Worker discussed the possibility of "obtaining a second opinion from an orthopedic hip doctor" or "undergoing an [IME]." Dr. Knaus, indeed, referred Worker to a different orthopedic specialist. When Dr. Knaus saw Worker on January 29, 2016, he recommended "starting an aquatic therapy program to work on ongoing strengthening and mobility." He did so because he "was hopeful that it would be beneficial for [Worker]." Dr. Knaus expressly stated that as of January 29, 2016, the last date on which he treated Worker, he had *not* placed Worker's

12

right hip at MMI. So too, Dr. Knaus's testimony fails to supply evidence to support the WCJ's finding on the issue of MMI.

{17}     With respect to Dr. Kiburz, he treated Worker only once, on August 19, 2015. In his treatment notes, Dr. Kiburz explained that Worker "presents for evaluation of right hip pain after a work[-]related injury. Her injury occurred on or about 4/17/2015." Under "Impressions," Dr. Kiburz indicated that Worker was suffering from two conditions: (1) "right Labral Tear Hip" and (2) "right Osteoarthritis Localized Primary Hip/Thigh." Dr. Kiburz recommended an intra-articular injection, which was performed by Dr. Knaus, and that Worker follow up with him in one month. Three months later and without seeing Worker again, Dr. Kiburz filled out a form letter to health care provider. In response to the form's preprinted question, "What is your diagnosis of the condition(s) for which you have treated the Worker?" Dr. Kiburz wrote "R Hip OA," indicating right hip osteoarthritis. As to that condition, Dr. Kiburz indicated that Worker had reached MMI as of August 19, 2015, the date on which he saw Worker. Nowhere in the statements made by Dr. Kiburz in the form letter does he so much as mention Worker's right hip labral tear. Thus, Dr. Kiburz's opinion at most supports a finding that Worker's right hip *osteoarthritis* had reached MMI, and nothing more.

{18}     Against the backdrop of this uncontradicted medical evidence, the WCJ's finding that Worker had reached MMI "for all conditions" no later than January

13

29, 2016, is unsupportable on this record. Notably absent from the WCJ's order is any discussion of the testimony and opinions of either Dr. Lyman or Dr. Knaus, with the order instead focusing solely, and unreasonably, on the opinion contained in Dr. Kiburz's form letter to support its determination. But in the context of determining whether Worker had reached MMI for the discrete injuries she suffered as a result of the work accident, Dr. Kiburz's form letter responses provide little, if any, probative worth, particularly in light of the evidence supplied by the whole record. *See Trujillo*, 2016-NMCA-041, ¶ 15 ("After reviewing all the evidence, both favorable and unfavorable, we disregard that which has little or no worth and then decide if there is substantial evidence in the whole record to support the agency's finding or decision." (internal quotation marks and citation omitted)). In all, we conclude that the WCJ's ruling is not supported by substantial evidence and must, therefore, be reversed.

**Remand is Necessary**

{19}    This Court has not hesitated to remand a case when the WCJ's order fails to clearly and meaningfully address the ultimate issues presented. *See Zanio's Foods, Inc.*, 2005-NMCA-134, ¶ 70 ("WCJ clarity and expressed reasoning is essential to our effective and meaningful review."); *St. Clair*, 1990-NMCA-087, ¶ 40 ("Where the findings of fact are insufficient to permit meaningful appellate review, the cause may be remanded in the interests of justice for the adoption of additional

14

findings."). We do so in this case because on the record and briefing before us, we cannot say that the WCJ's findings and conclusions with respect to the compensability of Worker's right hip injury are reasonable.[2] On remand, the WCJ must render a determination regarding the compensability of Worker's right hip injury that is supported by substantial evidence, including express findings relating to the date of MMI of Worker's right hip injury and the degree of disability caused by that injury. The WCJ may order additional discovery or an IME or may follow such other procedures as may be necessary to reach a reasonable compensation determination, one supported by substantial evidence.

{20} Our cases have previously cautioned parties and workers' compensation judges about the need to "take exceptional care to adequately cover the questions raised" in cases involving multiple injuries and where preexisting injuries may be at issue. *Molinar*, 2018-NMCA-011, ¶ 49 (internal quotation marks and citation omitted); *see Zanio's Foods, Inc.*, 2005-NMCA-134, ¶¶ 54, 57. This case serves as yet another example of how the failure to do so can unnecessarily prolong an

---

[2]Because of the deficient nature of the original briefs filed in this appeal, this Court ordered each of the parties to submit a supplemental brief addressing specific issues the Court identified as needing clarification. Worker's supplemental brief sufficiently clarifies her appellate argument to at least facilitate our ability to meaningfully review the compensation order herein. Employer's briefs have failed to provide this Court with either convincing counterarguments to the issues Worker raises or any reasoned analysis supporting affirmance of the decision below.

otherwise uncomplicated proceeding and delay the final disposition of cases that are intended to be resolved swiftly and efficiently.[3]

**CONCLUSION**

{21}    For the foregoing reasons, we reverse the WCJ's compensation order and remand for the WCJ to make a reasonable and supportable determination regarding the compensability of Worker's right hip injury.

---

[3]We reject Employer's attempt to shift to this Court any responsibility for the delay in resolving this appeal. Employer's speculative statement that "[e]lections, re-appointments[,] and staff turnover are likely the root cause of delay" not only has no place in an appellate brief but also ignores the primary source of delay: Employer's own preoccupation with baseless allegations and specious issues, and its concomitant failure to both develop a sufficient record below and present and argue only relevant facts and dispositive issues on appeal. We caution Employer and its counsel regarding the use of such disparaging assertions in future briefing to this Court.

Contrary to Employer's apparent belief, this Court has invested an inordinate amount of time and resources attempting to decipher and unravel both the parties' briefs and the WCJ's order. As noted above, this Court ordered supplemental briefing in order to provide both parties the opportunity to meaningfully aid the Court's review because of the obvious shortcomings of their initial briefs. Instead of making the most of the opportunity to clarify its argument, defend the WCJ's order, and offer this Court a possible path to affirmance, Employer does little more in its supplemental brief than recite myriad ancillary facts without providing any explanation or analysis of how these facts apply to workers' compensation law or inform our analysis of the issues presented herein. We are under no obligation to consider, more than we already have, Employer's unclear, undeveloped, unsupported contentions. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted); *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (explaining that this Court will not consider propositions that are unsupported by citation to authority).

16

{22}    **IT IS SO ORDERED.**

                                                    _____
                                                    **J. MILES HANISEE, Judge**


**WE CONCUR:**


_____
**JULIE J. VARGAS, Judge**


_____
**BRIANA H. ZAMORA, Judge**

17