# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: September 6, 2018**

**NO. S-1-SC-36651**

**CASEY R. BAKER,**

Worker-Petitioner,

v.

**ENDEAVOR SERVICES, INC. and
GREAT WEST CASUALTY COMPANY,**

Employer/Insurer-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI
Terry S. Kramer, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Kelly A. Genova, P.C.
Kelly A. Genova
Albuquerque, NM

for Respondents

**OPINION**

**CLINGMAN, Justice.**

{1}    Casey R. Baker (Worker) appeals the decision by the Workers' Compensation Administration denying his request that Endeavor Services, Inc. and Great West Casualty Company (Employer) pay 100% of Worker's attorney fees pursuant to the fee-shifting provision set forth in NMSA 1978, Section 52-1-54(F)(4) (2003, amended 2013). At issue is whether Worker made an offer of judgment that was sufficient to trigger the fee-shifting provision. Worker's offer of judgment put Employer on notice that Worker was proposing an unambiguous partial settlement and that Worker intended to invoke the fee-shifting statute. We conclude that Worker made a valid offer under Section 52-1-54(F) (2003) and hold that the workers' compensation judge erred as a matter of law by declining to apply the mandatory fee-shifting provision. We therefore reverse and remand.

**I.    DEFICIENCIES IN THE RECORD PROPER**

{2}    It is the duty of this Court to decide the cases before it if the factual record is sufficient to do so. The record proper before this Court is lacking in a number of ways. However, requiring a perfect record would mean this Court would rarely decide any cases. The parties in this case do not dispute the factual findings of the workers' compensation judge, but rather the parties dispute the judge's application of the law

to the facts. Unchallenged findings of fact are binding on this Court. *State ex rel. State Highway Comm'n v. Sherman*, 1971-NMSC-009, ¶¶ 2-3, 82 N.M. 316, 481 P.2d 104; *State ex rel. Thornton v. Hesselden Construction Co.*, 1969-NMSC-036 ¶ 4, 80 N.M. 121, 452 P.2d 190 ("[F]ailing to challenge any one of the trial court's findings . . . , [a party] is bound by the findings."); *Gallegos v. Kennedy*, 1968-NMSC-170, ¶ 6, 79 N.M. 590, 446 P.2d 642 ("Unchallenged findings are the facts upon which the case rests on appeal and are binding on this court."). "Unless findings are directly attacked, they are the facts in this court, and a party claiming error on the part of the trial court must be able to point clearly to the alleged error." *Sherman*, 1971-NMSC-009, ¶¶ 2-3 (citing *Morris v. Merchant*, 1967-NMSC-026, ¶ 21, 77 N.M. 411, 423 P.2d 606). Nowhere in the brief in chief, answer brief, or reply brief do the parties challenge the legitimacy of the facts presented. Instead, the parties dispute the analysis by the workers' compensation judge of the offer of judgment and the judge's application of Section 52-1-54(F)(4) (2003) to the offer. We conclude that sufficient factual certainty exists in the record before us to decide this case.

## II.    BACKGROUND

{3}    Worker suffered injuries as a result of a compensable motor vehicle accident on October 14, 2011. On January 9, 2012, Worker filed his first workers'

2

compensation complaint, seeking medical benefits, temporary total disability (TTD) benefits, and attorney fees. The parties participated in a mediation conference on February 17, 2012, and both parties accepted the mediator's recommended resolution of Worker's first complaint. However, a number of issues remained unresolved, including the total amount of Worker's medical expenses, Worker's preinjury weekly wage, and the compensation rate to which Worker was entitled. These issues remained unresolved until December 21, 2016, following a trial on the merits.

{4}     On July 22, 2013, Dr. Balkman assessed Worker to determine whether he had reached his maximum medical improvement (MMI). *See* NMSA 1978, § 52-1-24.1 (1990) ("As used in the Workers' Compensation Act, 'date of maximum medical improvement' means the date after which further recovery from or lasting improvement to an injury can no longer be reasonably anticipated based upon reasonable medical probability as determined by a health care provider."). Once a medical care provider, like Dr. Balkman, finds a worker to be at MMI, the healing process is deemed complete, *see id.*, and the worker's permanent physical impairment can be assessed. *See* NMSA 1978, § 52-1-26 (1990, amended 2017); *Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 10, 126 N.M. 725, 974 P.2d 1182 ("Key to determining MMI is 'expert medical testimony' regarding whether the injured worker

3

'is more likely than not' to recover further." (citation omitted)). A medical care provider quantifies the worker's permanent impairment into a percentage and, from that percentage, the worker's permanent partial disability (PPD) is calculated. *See* NMSA 1978, § 52-1-26.1 (1990); NMSA 1978, § 52-1-26.4(D) (2003). Dr. Balkman found Worker to be at MMI with an associated whole person impairment (WPI) rating of only 5%.

{5}     Employer accepted these findings and immediately began paying benefits in accordance with the July 22, 2013, MMI date and the 5% WPI rating. Dr. Balkman's findings had the effect of limiting Worker's available compensation, paid via PPD, to significantly less than what Worker believed he was entitled to. Worker contested Dr. Balkman's findings, arguing that he had not reached MMI and was entitled to continued payment of TTD benefits, rather than PPD benefits. Ultimately Worker argued that he had not reached MMI on July 22, 2013, counter to Dr. Balkman's findings, and in the future when he did reach MMI, he would be entitled to a WPI rating of 37%. Dr. Balkman later amended her findings on May 19, 2014, and determined Worker to have a WPI of 13% but did not change the date of MMI nor agree with Worker's assertion that his injuries warranted a 37% WPI rating.

{6}     On June 24, 2014, Worker was involved in a second motor vehicle accident,

a rear end collision, when he was driving from his home to Dr. Balkman's office to be treated for the injuries stemming from his October 14, 2011, accident. Following the second accident, Worker filed a second workers' compensation complaint concerning many of the issues that remained unresolved from the first complaint. A second mediation occurred on September 4, 2014. Employer rejected the mediator's recommendations. The parties continued to litigate the implications of the second accident, the date of MMI, Worker's WPI, and the compensation to which Worker was entitled.

{7}     On June 18, 2015, Employer changed Worker's treating physician to Dr. Reeve. Employer did not authorize Dr. Reeve to provide a second impairment assessment, reasoning that Dr. Balkman's assessment was sufficient.

{8}     On November 11, 2015, Worker served Employer with an offer of judgment. In the offer of judgment, Worker included four relevant terms to settle the case:[1]

    [1]     . . . Worker's weekly payment rate shall be $629.11 . . . .

    [2]     Worker's work-related injuries and conditions have not reached [MMI].

    [3]     Pursuant to [NMSA 1978,] § 52-1-25.1 [(2005), amended 2017)],

---

[1]Although Worker failed to include the offer of judgment in the record before this Court, Employer does not dispute that Worker's brief in chief accurately sets forth the terms of the offer.

5

> Worker is entitled to [TTD] benefits from October 14, 2011, and continuing until MMI is reached in the future for all work-related injuries and conditions.

> [4] Employer . . . shall forthwith issue payment of arrears to bring Worker's TTD benefits current at the rate of $629.11 per week, *less $100.00*. [Employer is] entitled to a credit for all indemnity payments made to date to Worker, *plus $100.00*.

Additionally, Worker offered to split his attorney fees equally with Employer. Thereafter, the workers' compensation judge scheduled a settlement conference for February 1, 2016. Employer rejected Worker's offer of judgment.

{9} The parties failed to reach a settlement and proceeded to trial on December 14, 2016. About a week before trial, Worker's attorney paid the $3,219.48 cost of a second impairment assessment by Dr. Reeve. Contrary to Dr. Balkman's findings, Dr. Reeve found that Worker reached MMI on December 7, 2016, and had a WPI rating of 37%. Also prior to trial the parties stipulated that Worker's TTD compensation rate was $629.11 per week. At the end of the trial, the workers' compensation judge issued a compensation order that included the following findings and conclusions:

> [1] Worker reached [MMI] on December 7, 2016.

> [2] Worker has a combined thirty-seven percent (37%) impairment as a result of his work injuries.

> . . . .

6

[3] The [second] motor vehicle accident was as a result of the work accident and is part of the compensable claim.

. . . .

[4] Worker's compensation rate is $629.11.

[5] Worker is entitled to [TTD] benefits from date of accident to December 7, 2016.

[6] Worker is entitled to [PPD] benefits at eighty-five percent (85%) commencing December 8, 2016 and continuing until conclusion of the benefit period unless otherwise ordered.

. . . .

[7] Employer is responsible for the $3,219.48 charge from Dr. Reeve for preparation of his final report.

[8] Worker's attorney is entitled to a reasonable fee to be set forth under separate order.

{10} Following trial, Worker filed an application for attorney fees and asked the workers' compensation judge to order Employer to pay 100% of Worker's attorney fees under Section 52-1-54(F)(4) (2003). The workers' compensation judge awarded Worker $42,925 in attorney fees and ordered each party to pay 50% of those fees. The workers' compensation judge declined to order Employer to pay 100% of Worker's attorney fees because "Worker's Offer of Judgment failed to address material facts and issues in dispute and determined at trial."

7

{11} Both parties appealed to the Court of Appeals. Employer contended that the workers' compensation judge erred by awarding benefits based on an MMI date of December 7, 2016. *See Baker v. Endeavor Servs., Inc.*, A-1-CA-36142 and A-1-CA-36272, mem. op. ¶ 1 (Aug. 8, 2017) (nonprecedential). Worker filed a cross-appeal, arguing that the workers' compensation judge erred by failing to order Employer to pay 100% of Worker's attorney fees. *Id.* ¶¶ 1-2. The Court of Appeals affirmed the compensation order, including the finding that Worker reached MMI on December 7, 2016. *Id.* ¶ 1. The Court of Appeals also affirmed the order requiring each party to pay 50% of Worker's attorney fees, concluding that Worker's offer of judgment left unaddressed PPD benefits, medical benefits, "or any other benefits, aside from attorney fees, that were contested issues and which worker was ultimately awarded." *Id.* ¶¶ 1-2. The Court of Appeals held that Worker's "offer did not supply an appropriate basis for application of the fee-shifting provision." *Id.* ¶ 3.

{12} Worker filed a petition for writ of certiorari, asking this Court to review (1) whether the workers' compensation judge erred by not ordering Employer to pay 100% of Worker's attorney fees, and (2) whether the Court of Appeals opinion affirming the workers' compensation judge conflicted with Section 52-1-54(F)(4) (2003) and *Abeyta v. Bumper to Bumper Auto Salvage*, 2005-NMCA-087, 137 N.M.

8

800, 115 P.3d 816. We granted certiorari to review the workers' compensation judge's application of the fee-shifting provision in Section 52-1-54(F)(4) (2003) to Worker's offer of judgment.

### III.   DISCUSSION

{13}   Employer relies on *Leonard v. Payday Professional*, 2007-NMCA-128, ¶ 23, 142 N.M. 605, 168 P.3d 177, to argue that Worker's offer was not a valid offer of judgment under Section 52-1-54(F) (2003) because the offer failed to address two contested issues. Specifically, Employer asserts that Worker's offer of judgment did not establish either the date on which Worker reached MMI or the PPD benefit Worker was entitled to, issues that were in dispute at the time Worker made his offer. Employer notes that before Worker made his offer of judgment, Dr. Balkman had found Worker to be at MMI and assigned Worker a WPI rating. Employer does not dispute the amount of attorney fees awarded but argues that the fee-shifting provision in Section 52-1-54(F)(4) (2003) should not apply because accepting Worker's offer could not have ended the litigation in this case.

{14}   Conversely, Worker argues that his offer of judgment was valid and that it was not necessary to specify the date of MMI or the PPD benefit. Worker explains that Dr. Balkman's determination of MMI, on which Employer relies, was erroneous and that

Worker had not yet reached MMI at the time the offer was made. He further contends that MMI need not be established as a prerequisite to a valid offer. In support of his argument, Worker relies on *Abeyta*, 2005-NMCA-087, ¶ 13, to illustrate that an offer of judgment may be valid even if the offer is made before a worker has reached MMI.

**A.     Standard of Review**

{15}     In this case, the parties do not dispute the factual findings of the workers' compensation judge, so we need only to review the application of Section 52-1-54(F)(4) (2003) to the facts. When we review a workers' compensation judge's interpretation of statutory requirements and the application of the law to the facts, we apply a de novo standard of review. *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 14, 146 N.M. 453, 212 P.3d 341. "We look first to the plain meaning of the statute's words, and we construe the provisions of the [Workers' Compensation] Act together to produce a harmonious whole." *Id.* (internal quotation marks and citation omitted). "Our main goal in statutory construction is to give effect to the intent of the legislature." *Grine v. Peabody Nat. Res.*, 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190 (internal quotation marks and citation omitted).

**B.     The Purpose of Section 52-1-54(F) (2003) Is to Encourage Prompt Settlement of Workers' Compensation Disputes**

{16}     The purpose of the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70

10

(1929, as amended through 2017), is to expeditiously and efficiently compensate injured workers while also being fair to employers. *See* NMSA 1978, § 52-5-1 (1990) (stating that the intent of the legislation is the "quick and efficient delivery of indemnity and medical benefits . . . at a reasonable cost to employers"). To aid in expeditiously disposing of claims, a mediator "evaluates all initial complaints." *See* 11.4.4.10(A) NMAC. Following a mediation conference, the mediator issues a recommended resolution of disputed issues. *See* 11.4.4.10(C)-(D) NMAC. If either party rejects the recommended resolution, then the employer or worker may serve on the opposing party an offer of judgment in accordance with Section 52-1-54(F) (2003). The pertinent portion of Section 52-1-54(F) (2003) reads,

> After a recommended resolution has been issued and rejected, but more than ten days before a trial begins, the employer or claimant may serve upon the opposing party an offer to allow a compensation order to be taken against [the employer or claimant] for the money or property or to the effect specified in [the] offer, with costs then accrued . . . .

{17} An offer of judgment is essentially an offer to stipulate to the issuance of a formal compensation order. *See* § 52-1-54(F) (2003); *see also Rivera v. Flint Energy*, 2011-NMCA-119, ¶¶ 2-3, 9, 268 P.3d 525 (discussing the formal entry of a compensation order following the employer's rejection of an offer of judgment and after a trial of the worker's claims). In an effort to promote settlement and avoid

11

lengthy litigation, Section 52-1-54(F)(4) (2003) encourages making and accepting reasonable offers of judgment by imposing financial sanctions on a party who rejects an offer of judgment and does not obtain a more favorable ruling in the compensation order. *See Hise v. City of Albuquerque*, 2003-NMCA-015, ¶ 9, 133 N.M. 133, 61 P.3d 842; *Leo v. Cornucopia Rest.*, 1994-NMCA-099, ¶ 28, 118 N.M. 354, 881 P.2d 714. Section 52-1-54(F)(4) (2003) states specifically,

> [I]f the worker's offer was less than the amount awarded by the compensation order, the employer shall pay one hundred percent [100%] of the attorney fees to be paid the worker's attorney, and the worker shall be relieved from any responsibility for paying any portion of the worker's attorney fees.

## C.      Worker's Offer of Judgment Was Valid

{18}      Three requirements must be met for a worker's offer of judgment to trigger the fee-shifting provision pursuant to Section 52-1-54(F)(4) (2003). *See Rivera*, 2011-NMCA-119, ¶ 3. To force the employer to pay 100% of the attorney fees, an offer of judgment must be (1) a valid offer under Section 52-1-54(F) (2003), (2) for an amount less than the award at trial, and (3) an offer which the employer rejected. *Id.* In this case, the parties dispute only whether Worker satisfied the first requirement by making a valid offer under Section 52-1-54(F) (2003). Employer does not dispute that Worker offered to accept less than he was subsequently awarded at trial or that

12

Employer rejected Worker's offer.

{19} In *Rivera*, the Court of Appeals held that a worker's offer of judgment was not a valid offer for the purposes of Section 52-1-54(F) (2003) because it failed to provide the employer with notice that the offer was intended to trigger the fee-shifting provision of Section 52-1-54(F) (2003). *Rivera*, 2011-NMCA-119, ¶ 6. *Rivera* observed that this notice requirement stems from basic contract principles. *Id.* ¶ 8 (citing *Naranjo v. Paull*, 1990-NMCA-111, ¶¶ 14-15, 111 N.M. 165, 803 P.2d 254). "In the law of contracts an offer is a proposal setting forth the essential terms of the prospective transaction." *Naranjo*, 1990-NMCA-111, ¶ 14. Thus, "[t]he notion that a choice, to be legally binding, should be a 'knowing' choice is well-established in similar situations." *Id.* ¶ 15. *Rivera* concluded that these contract principles extend to an offer of judgment under Section 52-1-54(F)(4) (2003). *Rivera*, 2011-NMCA-119, ¶¶ 8-9.

{20} For an offer of judgment to be legally binding it must set forth language making clear the intent of the offeror and implications of acceptance by the opposing party. *See id.* ¶ 9. In this case, the offer of judgment made clear that Worker was "allow[ing] a compensation order to be taken" if Employer accepted the terms of the offer. Section 52-1-54(F) (2003); *see Rivera*, 2011-NMCA-119, ¶ 10 (holding a worker's offer invalid under Section 52-1-54(F) (2003) for failing to "put Employer

13

on notice that the offer was one to allow a compensation order to be taken against Employer"). Worker specifically mentioned that attorney fees would be split equally if the offer was accepted. Unlike *Rivera*, 2011-NMCA-119, ¶ 9, there was no question whether Worker proposed an offer of judgment or merely an offer of settlement because the language "offer of judgment" was used in Worker's certificate of service. This language put Employer on notice that the offer was intended to trigger the fee-shifting provision of Section 52-1-54(F) (2003); therefore, the offer was not ambiguous in that regard.

{21}    Just as the offer of judgment must put the opposing party on notice of its implications, to be valid the offer must also address the critical issues raised in the complaint. *Leonard*, 2007-NMCA-128, ¶¶ 23, 25-26. If an offer of judgment does not dispose of the critical issues raised in a worker's compensation complaint, the offer is ambiguous and therefore invalid. *Id.* The offer must, at a minimum, provide a "frame of reference regarding the [opposing party's] liability." *Id.* ¶¶ 23, 25. The opposing party should be able to discern what its liability will be in order to make an informed decision to accept or reject the offer. *Id.* The terms of the offer of judgment must also allow the workers' compensation judge to ascertain whether the offeror received a more or less favorable outcome in the final compensation order compared to what was offered in the offer of judgment. *Id.* ¶ 25.

{22}    The Court of Appeals in *Leonard* found critical issues to be absent from the offer of judgment and concluded that the offer "was fatally defective." *Id. Leonard* was concerned with apportioning liability for a worker's injury between two employers. *Id.* ¶¶ 1, 5. The worker in *Leonard* presented an offer that did not address either employer's liability relative to the other employer. *Id.* ¶ 26. Therefore, the employers lacked any frame of reference as to what their respective liabilities would be if they were to accept the offer. *Id.* ¶ 25. Moreover, because the offer in *Leonard* was silent regarding the apportionment of liability, the workers' compensation judge was unable to determine whether the final compensation order provided a more or less favorable outcome to the worker. *Id.* Without answering that critical question, the offer was too ambiguous to be valid. *Id.* ¶ 26.

{23}    Here, although Employer points to uncertainty about the date of MMI and the rate of PPD as sufficient to invalidate the offer of judgment, these are not critical issues if the worker's healing process is incomplete. *See Abeyta*, 2005-NMCA-087, ¶ 10 ("[T]here is no basis for setting an MMI date if the healing process is still continuing."). The absence of an MMI date does not preclude an opposing party from ascertaining its potential liability set out in an offer of judgment. *See id.* ¶¶ 10-11. This reasoning of the Court of Appeals in *Abeyta* is consistent with the statutory provision that no permanent physical impairment or WPI can be deduced until the

15

worker has completed the healing process because, until MMI is reached, no PPD benefits can be determined. *See* § 52-1-26(D) (1990). Further, to force a worker or employer to include details in an offer of judgment that are dependent on the healing process of the worker would drastically delay settlements in compensation cases. *See Abeyta*, 2005-NMCA-087, ¶ 13 (stating that authorizing only those settlements where offers of judgment are delayed until completion of the healing process would "undercut" the intent and purpose of the Workers' Compensation Act). Unlike the offer of judgment in *Leonard*, the offer of judgment in *Abeyta* was unambiguous because the employer's liability was "not susceptible to more than one interpretation" despite the absence of an MMI date. *Abeyta*, 2005-NMCA-087, ¶¶ 11-13.

{24}    In this case, Worker set forth his proposed resolution of MMI and PPD in the offer of judgment which states, "Pursuant to § 52-1-25.1 [(2005)], Worker is entitled to [TTD] benefits from October 14, 2011 [date of injury], and continuing until MMI is reached in the future for all work-related injuries and conditions." Employer argues this language rendered the offer of judgment fatally ambiguous because the MMI date was not set at the time of Worker's offer. However, the language in Worker's offer of judgment was nearly identical to the language used by the worker in *Abeyta*. The worker in *Abeyta* offered to accept "TTD benefits paid for the time period from the date of injury until . . . [MMI] as determined by [the treating physician]." *Abeyta*,

16

2005-NMCA-087, ¶ 3 (omission in original) (internal quotation marks omitted). We recognize, as did the Court of Appeals in *Abeyta*, that the absence of an established MMI date presents a degree of risk to the employer. *See id.* ¶ 11. However, risk posed by an offer is different from ambiguity. The offers of judgment at issue in *Abeyta* and in this case are not susceptible to more than one interpretation. *See id.* ¶¶ 10-11. The Court of Appeals in *Abeyta* analyzed the language of the offer of judgment and found that, although lacking specific details, the employer understood the implications of the offer and understood the worker's intent in offering it but "found [the offer] too risky to undertake." *Id.* ¶¶ 10-12. Moreover, the workers' compensation judge in *Abeyta* was able to subsequently ascertain that the amount proposed in the worker's offer of judgment was less than what was awarded in the final compensation order. *See id.* ¶ 1. We reach the same conclusion as did the Court of Appeals in *Abeyta*. *See id.* ¶¶ 14-16.

{25} By November 11, 2015, when Worker filed the offer of judgment, Employer in anticipation of the potential for fee-shifting under Section 52-1-54(F)(4) (2003) could have filed an offer of judgment of its own. This would have exposed Worker to the same risk of fee-shifting as that to which Employer was then exposed. *See* § 52-1-54(F)(3) (2003). Or Employer could have entered into a partial settlement with Worker, effectively limiting its liability by constraining the issues to be litigated.

17

Instead Employer took no action and stood by the July 22, 2013, MMI assessment which Worker found unreasonable. Although MMI was not yet determined and the PPD benefits and WPI rating remained unknown at the time of Worker's offer of judgment, the framework of what Worker offered was clear, and Employer was well informed as to the scope of its liability. Worker's offer was unambiguous.

{26} An argument premised on an employer's dislike of the offer of judgment is not enough to render the offer defective. An offer of judgment is like any other offer to enter into a contract. If one side does not like the terms of the contract or does not agree with the other side's assertions, no contract need be formed. But in order "to encourage settlement of compensation cases by authorizing both parties to make offers of judgment," the Workers' Compensation Act requires the imposition of sanctions on parties who are unwilling to settle on reasonable terms. *See Abeyta*, 2005 NMCA-087, ¶ 13 (quoting *Leo*, 1994-NMCA-099, ¶ 28 (internal quotation marks omitted)).

{27} Employer also argues that Worker's offer of judgment is invalid because Employer's acceptance of the offer would not have ended the litigation. We do not read Section 52-1-54(F)(4) (2003) as requiring a worker's offer of judgment to propose the settlement of all issues in order to shift all attorney fees to the employer, nor would an employer's offer of judgment need to propose the settlement of all

issues in order to shift all attorney fees to the worker under Section 52-1-54(F)(3) (2003). As we discussed previously, as long as the offer of judgment provides a sufficient frame of reference concerning contested issues, questions raised in the complaint may be left unresolved. *See Leonard*, 2007-NMCA-128, ¶¶ 25-26. In workers' compensation cases, the possibility of litigation continues until the worker is both healed and fully compensated. Until that time, disputes regarding the worker's medical bills, compensation rate, disability rating, or any number of other issues may arise. The purpose of an offer of judgment is to incentivize resolution of the complaint, but the offer's validity does not rest on all issues related to the worker's injury being immediately and completely resolved.

{28} We conclude, based on the plain language and stated purpose of the Workers' Compensation Act and the collective reasoning of *Abeyta*, *Leonard*, and *Rivera*, that Worker made a valid offer of judgment, sufficient to trigger the fee-shifting provision set forth in Section 52-1-54(F)(4) (2003).

**D.    Fee-Shifting Is Mandatory If the Requirements of Section 52-1-54(F) (2003) Are Met**

{29} Employer relies on *Abeyta*, 2005-NMCA-087, ¶ 20, to contend that, even if Worker's offer was valid under Section 52-1-54(F) (2003), the workers' compensation judge had discretion to award Worker only 50% of his attorney fees.

19

Worker argues that the workers' compensation judge must apply the statute's fee-shifting provision if the requirements of Section 52-1-54(F) (2003) are met. Worker, therefore, asserts that the workers' compensation judge erred as a matter of law by declining to order Employer to pay 100% of Worker's attorney fees. We agree with Worker.

{30} The plain language of the statute is clear and unambiguous and *requires* attorney fees to be shifted to the rejecting party if the final compensation awarded to the offeror exceeds what was initially offered. *See* § 52-1-54(F)(3)-(4) (2003). This type of sanction is consistent with the intent of the statute, which incentivizes settlements in compensation cases. *See Hise*, 2003-NMCA-015, ¶ 9. We review for abuse of discretion the factual findings underlying the judge's compensation order that determined whether to impose statutory fee-shifting. *See Abeyta*, 2005-NMCA-087, ¶¶ 9, 20 (noting that "an abuse of discretion can include a discretionary decision that is premised on a misapplication of the law"). If the findings meet the requirements of Section 52-1-54(F) (2003), then fee-shifting is mandatory. *See id.*¶¶ 19-20. In *Abeyta*, there was a close factual question regarding whether the amount the worker proposed in the offer of judgment was less than the amount awarded in the final compensation order—a prerequisite to fee-shifting. *Id.* ¶ 20. The workers' compensation judge in *Abeyta* used sound discretion to determine that factual

20

question in the worker's favor. *Id.* ¶¶ 14-16. It was not an abuse of discretion for the workers' compensation judge to find that the amount awarded in the compensation order exceeded the amount proposed in the offer of judgment. *Id.* ¶¶ 14-15.

{31} After rejecting Worker's offer of judgment, Employer incurred additional liability for costs not included in the offer of judgment. Comparing findings and conclusions from the December 21, 2016, compensation order to portions of the November 20, 2015, offer of judgment provides a basis for the workers' compensation judge to find that Worker's benefits received through the compensation order exceeded those he would have obtained under the offer of judgment. Such a finding is a prerequisite to fee-shifting.

{32} The workers' compensation judge erroneously declined to apply the fee-shifting statute because the judge concluded that Worker's offer of judgment "failed to address material facts and issues in dispute." But as we explained in the previous section, an offer of judgment need not establish the date of MMI or amount of PPD benefits if the healing process is still underway. We conclude that the workers' compensation judge erred as a matter of law by declining to apply the fee-shifting provision, Section 52-1-54(F)(4) (2003), where Worker's offer of judgment met all of the requirements to trigger fee-shifting under the statute. We therefore hold that the workers' compensation judge erred by failing to award Worker 100% of his

21

attorney fees.

## IV.    CONCLUSION

{33}    We reverse and remand to the Workers' Compensation Administration for further proceedings consistent with this opinion.

{34}    **IT IS SO ORDERED.**


_____
**GARY L. CLINGMAN, Justice**

**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**BARBARA J. VIGIL, Justice**

**NAKAMURA, Chief Justice (dissenting).**

**NAKAMURA, Chief Justice (dissenting).**

{35}     Worker failed to offer terms resolving all of the disputed matters necessary to determine whether his settlement offer was less than the compensation awarded. Accordingly, Worker is not entitled to fee shifting. Both the Workers' Compensation Judge (WCJ) and Court of Appeals were correct and should be affirmed. For these reasons, I dissent.

{36}     "New Mexico has traditionally followed the American Rule by which each litigant is ordinarily responsible for its own attorney's fees." *Carrillo v. Compusys, Inc.*, 2002-NMCA-099, ¶ 10, 132 N.M. 710, 54 P.3d 551. Nevertheless, "it is well settled that the [L]egislature may override the American Rule by enacting a fee-shifting statute." *Id.* Section 52-1-54(F)(4) is an example of just such a statute. *Id.*

{37}     "As a general rule, statutes in derogation of the common law are to be strictly construed." *Albuquerque Hilton Inn v. Haley*, 1977-NMSC-051, ¶ 7, 90 N.M. 510, 565 P.2d 1027. What is the consequence of this proposition for our assessment of Section 52-1-54(F)(4)? The "purpose" provision of the Workers' Compensation Act (WCA) bears on this question. It states that

> [i]t is the specific intent of the [L]egislature that benefit claims cases be decided on their merits and that the common law rule of 'liberal construction' based on the supposed 'remedial' basis of workers' benefits legislation shall not apply in these cases. The workers' benefit

23

system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike. Accordingly, the [L]egislature declares that the [WCA] . . . [is] not remedial in any sense and [is] not to be given a broad liberal construction in favor of the claimant or employee on the one hand, nor are the rights and interests of the employer to be favored over those of the employee on the other hand.

Section 52-5-1. This provision was enacted to provide our courts with guidance when asked to interpret the WCA. *Garcia v. Mt. Taylor Millwork, Inc.*, 1989-NMCA-100, ¶¶ 9-10, 111 N.M. 17, 801 P.2d 87. "Section 52-5-1 calls for a balanced and evenhanded construction of the [WCA]." *Gomez v. B.E. Harvey Gin Corp.*, 1990-NMSC-057, ¶ 9, 110 N.M. 100, 792 P.2d 1143. This conclusion stems, in part, from the fact that "[f]undamental fairness to both the workers and employers has long been a guideline." *Garcia*, 1989-NMCA-100, ¶ 11.

{38} What conclusions can we draw from these authorities? It seems clear that, as a general matter, we must favor neither workers nor employers when construing the WCA. In this specific case, we must consider the text of Section 52-1-54(F)(4) in a neutral and disinterested way and construe the provision in a manner that best advances the purposes and policies it was enacted to advance.

{39} Section 52-1-54(F)(4) exists "to encourage the parties to resolve their differences before hearing thus supporting the policy of judicial economy and allowing for more timely resolution of claims." *Meyers v. W. Auto*,

24

2002-NMCA-089, ¶ 25, 132 N.M. 675, 54 P.3d 79. It is designed to "require[] the parties to think very hard about whether continued litigation is worthwhile." *Baber v. Desert Sun Motors*, 2007-NMCA-098, ¶ 18, 142 N.M. 319, 164 P.3d 1018 (internal quotation marks and citation omitted).

{40}    The Court of Appeals has embraced a pragmatic approach to resolve whether fee shifting shall be imposed: "The compensation order is . . . compared to the offer of judgment in order to determine whether attorney fees should be shifted." *Id.* ¶ 17. This comparison is exceedingly straightforward; the question is simply "Did the worker ultimately get more than he asked for?" *Meyers*, 2002-NMCA-089, ¶ 26. Despite the rudimentary nature of this analysis, complex questions regarding the applicability of the provision have arisen.

{41}    In *Rivera*, the WCJ declined to apply the fee-shifting provision despite the fact that the worker's offer of settlement was less than the award he ultimately received. 2011-NMCA-119, ¶ 3. The WCJ determined that the letter submitted by the worker as the offer "did not provide sufficient specificity or adhere sufficiently to the statute to trigger the statute's fee-shifting provisions." *Id.* (internal quotation marks omitted). Specifically, the letter "did not mention the statute or state that the offer it contained was valid only for the ten-day period the statute requires." *Id.* ¶ 9. Further, it "did not refer to the statute's fee-shifting provision." *Id.* It also "did not state that

25

accepting the offer would require [the e]mployer to have a compensation order entered against it." *Id.*

{42} For these reasons, the Court of Appeals concluded "that the [worker's] offer did not set forth any language that can support the type of agreement [the w]orker claims he intended" and further concluded that "[s]uch an omission makes the offer ambiguous as to whether [the w]orker proposed an offer of settlement or an offer of judgment." *Id.* The Court rightly speculated that the employer "could reasonably have concluded that accepting [the w]orker's offer to 'settle' the case would result in the simple dismissal of the action before the [WCA], rather than the formal entry of an order that the statute requires." *Id.* The Court held that these flaws were "fatal" and rendered the offer "incomplete" and "a nullity." *Id.* (internal quotation marks and citation omitted). *Rivera* was rightly decided but has no bearing on Worker's appeal.

{43} We are not concerned here with whether Worker's November 11, 2015 offer was a communication constituting an "offer" for purposes of Section 52-1-54(F)(4). The parties accept that Worker *did* convey an offer to Employer and that this offer *did* trigger Section 52-1-54(F)(4). The question before us is simply whether the WCJ correctly concluded that the fee-shifting provision should not apply. To answer that question, we must resolve whether Worker's offer was less than what Worker ultimately received from the WCJ's compensation award. The parties' positions as

26

to this issue are clear. Worker contends that "the benefits [he] obtained from the compensation order . . . exceeded the benefits that Worker offered to accept . . . ." Employer counters that "the offer could not actually be evaluated in terms of dollar value" as "Worker's offer of judgment did not address the issues in the case, including MMI and disability rating."

{44} Employer's argument is correct. The basis for this conclusion is explained in the writing that follows. Here, it is necessary to emphasize that the majority's erroneous resolution of this case appears to be rooted in its belief that the sole issue before us is whether Worker's offer was "valid." *See Maj. Op.* ¶ 18 (citing *Rivera* for the proposition that fee shifting under Section 52-1-54(F)(4) shall apply where (1) a valid offer is conveyed; (2) that is less than the ultimate award; and (3) which the employer rejected, and further stating that, "[i]n this case, the parties dispute only whether Worker satisfied the first requirement by making a valid offer under Section 52-1-54(F) (2003)"). According to the majority, the validity of any offer is a question that is intertwined with the question of whether that offer is "ambiguous." *See Maj. Op.* ¶ 21 (citing *Leonard* for the proposition that an offer, to be valid, "must also address the critical issues raised in the complaint" and further stating that, "[i]f an offer of judgment does not dispose of the critical issues raised in a worker's compensation complaint, the offer is ambiguous and therefore invalid."). The

27

consequence of this analytical framework is that the question of whether an offer is valid or ambiguous becomes a matter entirely distinct from the question of whether an offer is comparatively less valuable than the award. This is error.

{45} Employer's argument here is that the terms of Worker's offer were uncertain or incomplete and, therefore, the value of his offer could not and cannot be measured against the award to decide if fee shifting under Section 52-1-54(F)(4) is appropriate. To put it more simply: the value of Worker's offer is indiscernible and, therefore, cannot be compared to the award and fee shifting cannot be imposed. The assertion that "Employer does not dispute that Worker offered to accept less than he was subsequently awarded at trial[,]" *Maj. Op.* ¶ 18, is simply incorrect. Employer *does* dispute this fact. Additionally, the majority relies on *Abeyta* for the proposition that "[t]he absence of an MMI date does not preclude an opposing party from ascertaining its potential liability set out in an offer of judgment[,]" *Maj. Op.* ¶ 23, and relies on this assertion as a major premise for its resolution of this case. This assertion and interpretation of *Abeyta* is incorrect.

{46} In *Abeyta,* the WCJ imposed the fee-shifting provision and ordered the employer to pay all of the worker's attorney fees. 2005-NMCA-087, ¶ 1. The employer appealed arguing that the WCJ erred because the worker's initial offer was "ambiguous," and "[the w]orker failed to show that his offer was less than the amount

28

awarded in the final compensation order . . . ." *Id.* The Court of Appeals proceeded to address these arguments as conceptually distinct matters, and yet (knowingly or not) acknowledged their unity in the course of its analysis.

{47} The Court of Appeals made special note of the fact that the employer and the worker in *Abeyta* agreed (without reservation) that the worker had not reached MMI at the time he provided his offer to the employer and, therefore, the offer did not and could not specify an MMI date. *Id.* ¶¶ 10,13. The Court spent some time discussing the employer's claim that this feature of the offer rendered it ambiguous as a matter of contract law, *id.* ¶ 11, but this aspect of *Abeyta* is inessential.

{48} Our Legislature's decision to enact Section 52-1-54(F)(4) and punish employers who refuse mutually advantageous settlement offers is rooted not in belief that the law of contracts must be scrupulously upheld in the workers' compensation context. Rather, the motivation behind the statute is to encourage the maximally efficient resolution of cases. Accordingly, the touchstone for determining whether fee shifting is appropriate is a simple comparison of the value of the offer and award, a comparison that allows an empirical assessment of whether an employer has wasted the worker and the Workers' Compensation Administration's time and resources. It is this realization that lies behind the essential conclusions reached in *Abeyta*.

{49} The Court determined in *Abeyta* that the lack of an agreement as to MMI given

29

the facts presented in *Abeyta* posed no impediment to the application of Section 52-1-54(F)(4). *Abeyta*, 2005-NMCA-087, ¶ 13. The Court reasoned that it would thwart the underlying purposes of Section 52-1-54(F)(4) to hold that parties cannot bargain around a variable (MMI) both agree is indiscernible and concluded that an employer risks the imposition of the fee-shifting provision as a penalty if it declines a settlement offer that resolves all other variables for which fixed terms can be offered and that otherwise resolves the dispute. *Abeyta*, 2005-NMCA-087, ¶ 13. These conclusions are correct.

{50} As both parties in *Abeyta* agreed that the MMI date could only be prospectively assigned, the value of the worker's settlement offer turned almost entirely on the other assignable variables to the extent that they existed, i.e., TTD, WPI, medical costs, attorney fees, etc. Because the worker offered terms as to those matters, the employer refused those terms, and the worker ultimately got a better outcome as to those terms in the award, the absence of an agreement as to MMI made only a marginal difference. The locus of the "value" of the offer was the terms for the variables that could be fixed. Because the worker offered less than he got as to those variables, the offer could be deemed less valuable than the award and it was right to punish the employer for refusing the offer and prolonging the proceedings. To be sure, leaving the question of MMI open necessarily meant that the precise value of

30

the offer in *Abeyta* was somewhat uncertain. But, that uncertainty was tolerable and fell evenly on both parties. This reading of *Abeyta* is supported by the facts presented there.

{51} The compensation award issued in *Abeyta* derived from a stipulation between the parties that the employer's second counteroffer fully settled the matter. 2005-NMCA-087, ¶ 5; *see also id.* ¶ 13 ("[A] compensation order entered pursuant to a settlement can be utilized when evaluating whether an offer of judgment has been met under Section 52-1-54(F)."). When comparing the offer and award, the Court of Appeals focused on the fact that the TTD rate awarded exceeded the TTD rate offered and on the fact that the worker was awarded payment for medical benefits he had not requested in his offer. *Id.* ¶¶ 14-15. Because the parties stipulated that the offer fully settled the matter, we can infer that these were the only variables apart from MMI at issue in the case. And because the employer rejected a settlement offer with less valuable terms as to these variables, the Court correctly concluded that the worker's offer was less valuable than the compensation awarded. Worker's case is plainly distinguishable from *Abeyta*.

{52} Unlike *Abeyta*, the date of Worker's MMI has nearly always been vigorously disputed by the parties. Employer has insisted, since at least November 2013, that worker reached MMI on July 22, 2013. From Employer's perspective, Worker's

31

healing process had already ended at the time he conveyed his settlement offer and he had reached MMI years earlier. Worker's case is unlike *Abeyta* in another crucial respect. Worker's MMI date was not the only term left unresolved in Worker's offer. He failed to offer terms as to his WPI rating. The record reflects that Employer has consistently contended that Dr. Balkman correctly identified Worker's WPI rating, while Worker has insisted that Dr. Balkman was wrong and that his WPI was always much higher. These disputes—the date of Worker's MMI and his WPI rating—are legally significant to whether Worker's settlement offer was less valuable than the compensation awarded. To see why this is so, we must have some general grasp of how workers' compensation benefits are calculated and the benefits calculation conducted in Worker's case.

{53}     TTD payments are issued until the date of MMI. Section 52-1-25.1 (2005); *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 7, 122 N.M. 524, 928 P.2d 250 ("Eligibility for the various temporary benefits provided under the [WCA] ends at the date of MMI. From this point forward, the worker is entitled to further benefits only if he or she can establish a permanent—either partial or total—disability." (citation omitted)). "Compensation benefits, including TTD benefits, are calculated based on a worker's pre-injury 'average weekly wage.'" *Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, ¶ 33, 149 N.M. 198, 246 P.3d 1070. "A worker is entitled to full

32

TTD benefits if he is unable by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's [MMI]." *Id.* ¶ 32 (alteration in original) (internal quotation marks and citation omitted). *But see Ortiz v. BTU Block & Concrete Co.*, 1996-NMCA-097, ¶ 10, 122 N.M. 381, 925 P.2d 1 (stating that the WCA "provides for payment of [full] total disability benefits prior to [MMI] except in two enumerated circumstances").

{54} After MMI, a worker may be eligible for PPD benefits and, if eligible, will receive a percentage of the compensation rate in PPD payments. *See Hawkins v. McDonald's*, 2014-NMCA-048, ¶ 20, 323 P.3d 932 ("Once an injured worker reaches MMI, a different statutory provision of the WCA takes effect. Under Section 52-1-26(B), a worker may be eligible for PPD benefits if the worker has suffered a 'permanent impairment.' The impairment constitutes the base value for the disability benefit award."). The percentage of benefit payments increases as WPI increases. Section 52-1-26.1. "If an injured worker receives temporary disability benefits prior to an award of [PPD] benefits, the maximum period for [PPD] benefits shall be reduced by the number of weeks the worker actually receives temporary disability benefits." Section 52-1-42(B) (1990); *see Gurule v. Dicaperl Minerals Corp.*, 2006-NMCA-054, ¶ 12, 139 N.M. 521, 134 P.3d 808 (citing with approval the WCJ's

33

determination "that the duration of a worker's benefit entitlement is based on a weekly scheme, rather than an absolute dollar amount, and that the rate of the benefit may vary over the duration of a worker's entitlement"). Collectively, these provisions make clear that a worker's MMI and WPI are integral to assessing a worker's total entitlement to compensation. The facts of this case illustrate this point.

{55} The WCJ determined that Worker's compensation rate is $629.11, his MMI date is December 7, 2016, his WPI is 37%, and the "benefit period is 700 weeks." Worker was awarded roughly 268 weeks (October 14, 2011 through December 7, 2016) of TTD benefits, a total of approximately $168,500 ($629 a week for 268 weeks). Worker was also awarded roughly 432 weeks (the remainder of the 700 week benefit period) of PPD payments at eighty-five percent (thirty-seven percent WPI plus forty-eight percent modifier points) of the compensation rate, or approximately $231,000 (eighty-five percent of $629, a total of $535 a week for 432 weeks). As Worker's MMI extended outward, he received additional weekly TTD payments. As Worker's WPI increased, his weekly PPD payment rate increased. To see the significance of this observation, it is useful to compare what Worker would have received had the WCJ accepted Dr. Balkman's findings. This comparison is readily achieved as Worker's attorney offered this very comparison in his application for attorney fees with the Workers' Compensation Administration in an attempt to show

34

just how much additional benefits he obtained for Worker.

{56} If Dr. Balkman's July 22, 2013 MMI determination governed, Worker would have received $629 per week in TTD payments for only ninety-two weeks, a total of (approximately) $58,000. This is nearly $110,500 dollars less than what Worker received in light of the fact that the WCJ accepted Dr. Reeve's findings. For PPD payments, if we assume the modifiers remained forty-eight percent and then added only thirteen percent WPI to reflect Dr. Balkman's revised WPI determination, Worker's weekly PPD payment would have been only $384 per week (sixty-one percent of $629). This is $150 less per week than what Worker was awarded.

{57} The WCJ was aware of the significance of MMI and WPI when he concluded that Worker was not entitled to the application of Section 52-1-54(F)(4). The WCJ specifically stated that Worker was not entitled to fee shifting because his offer did not "address material facts and issues in dispute and determined at trial." The WCJ's conclusion can be translated this way: because Worker failed to offer terms resolving all of the disputed matters bearing on Worker's entitlement to compensation benefits, Worker is not entitled to fee shifting under Section 52-1-54(F)(4) because it was (and still is) impossible to determine whether Worker's settlement offer was less than the compensation awarded. This reasoning is sound.

{58} To hold, as the majority does, that an employer should be punished for refusing

35

a settlement offer the value of which is indiscernible and which left unresolved crucial matters relating to benefits to which Worker claimed he was entitled and which the parties vigorously disputed from nearly the inception of the proceedings is error. Our Legislature could not have intended this result. Indeed, in the wake of this case, employers will likely be confronted with some regularity by a Hobson's choice: accept uncertain settlement offers that do not propose terms sufficient to calculate liability, or reject such offers and run the risk of the fee-shifting penalty. This outcome cannot be said to reflect a construction of the WCA that is balanced and even handed to workers and employers.

{59} The majority justifies its conclusion on two closely related grounds. First, it states that "[t]he absence of an MMI date does not preclude an opposing party from ascertaining its potential liability set out in an offer of judgement" and cites *Abeyta* to support this claim. *Maj. Op.* ¶ 23. From this assertion, the majority concludes that "Employer was well informed as to the scope of its liability." *Id.* ¶ 25. Second, the majority contends that "[h]ere, although Employer points to uncertainty about the date of MMI and the rate of PPD as sufficient to invalidate the offer of judgment, these are not critical issues if the worker's healing process is incomplete." *Id.* ¶ 23. This point is repeated in later discussion. *See id.* ¶ 32 ("[A]s we explained in the previous section, an offer of judgment need not establish the date of MMI or amount of PPD

36

benefits if the healing process is still underway."). I do not agree with these claims.

{60} Where a worker declines to offer terms as to the date of MMI, the degree of WPI, or any other term essential to calculating a Worker's entitlement to benefits, the opposing party will not be able to ascertain its liability because it will not be able to assess the value of the offer. The majority's assertions to the contrary are incorrect, and its reliance on *Abeyta* misplaced.

{61} *Abeyta* is the exception, not the rule. As already noted, it holds that where both parties agree that the MMI date is unknowable but the parties nevertheless settle all other material variables bearing on benefit entitlement, the absence of a specified MMI date produces only a tolerable range of uncertainty. This case is nothing like *Abeyta*, and the preceding review of what Worker would have received with an earlier MMI date and a lesser WPI rating reveals that Worker's failure to offer terms created meaningful uncertainty that cannot in any way be described as tolerable.

{62} It is possible that the majority believes this case is like *Abeyta* because the district court ultimately found that Worker reached MMI on December 7, 2016—one year after Worker submitted his settlement offer. This finding establishes that the WCJ did indeed find that Worker was healing at the time he submitted his settlement offer. But the WCJ's findings cannot supply the basis for the imposition of a penalty where no offer fully resolving the dispute is presented before the findings are issued.

37

To put the point slightly differently, the trial at which the WCJ made its findings about Worker's MMI and WPI was not unnecessary. Worker, having failed to issue a settlement offer that would sufficiently resolve the disputed issues, cannot point to the outcome of trial and complain that Employer should now pay a penalty for refusing terms and unnecessarily prolonging the litigation. Terms were not offered. The litigation was not unnecessarily prolonged.

{63} Worker contends that this thinking is error as it necessarily requires him "to predict an unknown date of MMI and to prematurely assess impairment and modifier values." This contention ignores the fact that medical professionals are routinely asked, in the course of litigation, to make predictions. In fact, the doctor whose opinion was central to the dispute in *Abeyta* made a prediction that has doubtless significance here: "Dr. Marchand predicted an MMI date at a deposition taken two days before [w]orker's offer, and by the time of the hearing on attorney fees, it turned out that the MMI date was as Dr. Marchand had predicted." *Abeyta*, 2005-NMCA-087, ¶ 16. Moreover, the very question whether a worker has reached MMI is itself predictive. *See Smith v. Cutler Repaving*, 1999-NMCA-030, ¶ 12, 126 N.M. 725, 974 P.2d 1182 ("[W]hether a worker has reached MMI turns on proof of a reasonable medical probability of future recovery and lasting improvement."). To the extent a worker must make predictions about MMI or any other matter bearing on

38

the worker's entitlement to benefits in order to present a settlement offer the value of which an employer can assess, requiring the worker to make those predictions places no unusual burden upon them.

{64}     *Leonard* is the case to which the present matter bears the most resemblance. There, the worker suffered two injuries to her back while working for two employers and filed two workers' compensation claims that were consolidated. 2007-NMCA-128 ¶¶ 1, 5. The worker made an offer to the employers that was rejected, and she later prevailed at trial. *Id.* ¶¶ 5-7. Afterwards, the worker requested that the fee-shifting provision be applied and the two employers pay 100% of her attorney fees. *Id.* ¶ 8. The WCJ rejected this request on grounds that the offer did not address "the relative responsibilities of the [e]mployers . . . to pay for surgical medical care for the [w]orker." *Id.* ¶ 23.

{65}     The worker appealed and argued that the WCJ's reasoning was flawed because "her offer of judgment, if accepted, would have disposed of all issues between her and the employers." *Id.* ¶ 24. She pointed out "that neither of the employers filed a cross-claim against the other and that the employers would have had the option to move for post-litigation proceedings for reimbursement, if necessary." *Id.* The worker added that "the legislative intent of Section 52-1-54(F) is to encourage settlement in workers' compensation cases and, in light of that purpose, [w]orker's

offer of judgment was not without legal effect merely because it left some issues unresolved." *Id.* The Court of Appeals was not persuaded.

{66} It acknowledged that the worker was correct that "the purpose of Section 52-1-54(F) is to encourage settlement," but determined that the worker failed to proffer an offer that specified each employer's liability and, therefore, "cannot be said to provide a more or less favorable outcome for the employers." *Leonard*, 2007-NMCA-128, ¶ 25. In other words, the worker's offer could not be compared with the award to determine if the offer was of lesser value. Worker's case is analogous to *Leonard*.

{67} Worker's offer failed to provide terms for specific, disputed matters relating to his entitlement to benefits. Such an offer provides no basis for comparison to the compensation award subsequently entered. Accordingly, Worker is not entitled to have Employer pay his attorney fees.

{68} Worker cannot protest that Employer needlessly prolonged this litigation where Worker failed to offer terms fully settling the benefit entitlement issues. The WCJ did not err when he declined to impose Section 52-1-54(F)(4). The Court of Appeals correctly affirmed the WCJ, and the Court of Appeals decision should be affirmed.

_____

**JUDITH K. NAKAMURA, Chief Justice**

40