The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: June 25, 2025

**No. A-1-CA-41123**

**RICARDO SANCHEZ,**

     Worker-Appellant,

v.

**U-HAUL COMPANY OF NEW MEXICO and NEW HAMPSHIRE INSURANCE COMPANY,**

     Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Anthony Couture, Workers' Compensation Judge**

Dorato & Weems, LLC
Derek Weems
Albuquerque, NM

for Appellant

Hoffman Kelley Lopez LLP
Jeffrey Federspiel
Albuquerque, NM

for Appellees

**OPINION**

**DUFFY, Judge.**

{1}    Ricardo Sanchez (Worker) appeals the Workers' Compensation Judge's (WCJ) order granting Worker's application for bad faith and unfair claim processing under NMSA 1978, Section 52-1-28.1(B) (1990) of the Workers' Compensation Act (WCA). The WCJ awarded two benefit penalties to Worker, one for bad faith and one for unfair claim processing. Worker argues that the WCJ erred in (1) assessing only two benefit penalties, (2) failing to consider violations of common law and statutory duties as a basis for additional bad faith or unfair claim processing penalties under Section 52-1-28.1(B), and (3) calculating the amount of the benefit penalties. We disagree with Worker on the first and second issues but agree with Worker on the third issue, and we therefore affirm in part and reverse in part.

**BACKGROUND**

{2}    Worker suffered a work-related injury on August 10, 2017, when he fell while using a floor buffer to clean the inside of a moving truck. Worker was diagnosed with a lumbar strain and given work restrictions of twenty-five pounds. U-Haul Company of New Mexico and New Hampshire Insurance Company (collectively, Employer/Insurer) began paying Worker temporary total disability (TTD) benefits in the amount of $467.08 per week.

{3}     Employer/Insurer, believing it had the right to select a second healthcare provider (HCP) under NMSA 1978, Section 52-1-49 (1990), changed Worker's HCP from Concentra to Dr. Paul Legant. Dr. Legant determined Worker was at maximum medical improvement (MMI) and assigned Worker a two percent whole person impairment rating. Employer/Insurer ceased paying Worker TTD benefits in October 2017, but delayed over three months before beginning to pay Worker permanent partial disability (PPD) benefits, which, at the two percent impairment rating, amounted to just $9.34 per week.

{4}     Worker disputed that he was at MMI, and the parties agreed Worker would undergo an independent medical evaluation by a panel of two doctors. The panel concluded that Worker had not yet reached MMI. On February 22, 2019, nearly a year and a half after the work accident, the WCJ issued a compensation order finding that Worker had not reached MMI. The WCJ determined that Worker was entitled to TTD benefits in the amount of $499.97 per week dating back to September 11, 2017. Employer/Insurer paid Worker $36,683.76 in back-owed benefits.

{5}     Worker received TTD benefits until he reached MMI on August 14, 2020. On April 1, 2021, the WCJ entered a stipulated compensation order regarding Worker's PPD benefits. The parties agreed that Worker was entitled to modified PPD benefits at seventy percent, or $349.98 per week, based on Worker's fourteen percent whole person impairment rating and modifiers of fifty-six percent.

2

{6}     After Worker's indemnity benefits had been settled, Worker filed an application for bad faith and unfair claim processing, alleging that Employer/Insurer had committed thirty-three separate acts of unfair claim processing and bad faith in the course of handling Worker's claims for benefits. The WCJ found that Employer/Insurer "unintentionally" violated Section 52-1-49 regarding the healthcare selection process, which resulted in an unreasonable delay in payment of benefits to Worker and amounted to unfair claim processing. The WCJ also determined that Employer/Insurer attempted to circumvent restrictions against ex parte communication with Worker's health care providers by assigning a nurse case manager for litigation purposes, which delayed Worker's care and amounted to bad faith. The WCJ assessed a fine against Employer/Insurer in the amount of $4,694.69 for unfair claim processing, and another fine in the amount of $4,694.69 for bad faith. Worker appeals.

**DISCUSSION**

{7}     Worker's claims on appeal center on the number of penalties awarded by the WCJ and their amount under Section 52-1-28.1(B), which states, "If unfair claim processing or bad faith has occurred in the handling of a particular claim, the claimant shall be awarded, in addition to any benefits due and owing, a benefit penalty not to exceed twenty-five percent of the benefit amount ordered to be paid." As we explain, Worker has not demonstrated error in the WCJ's determination that

3

Worker was entitled to two penalties under Section 52-1-28.1(B), and Worker did not preserve his argument that common law or Insurance Code violations can serve as a basis for additional penalties under Section 52-1-28.1(B); but we agree with Worker that the WCJ's calculation of the benefit amount was not in accordance with Section 52-1-28.1(B).

{8} To the extent Worker asks us to review the WCJ's factual findings, our review is for substantial evidence under a whole record standard. *See Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. To the extent Worker asks us to review "a workers' compensation judge's interpretation of statutory requirements and the application of the law to the facts, we apply a de novo standard of review." *Baker v. Endeavor Servs., Inc.*, 2018-NMSC-035, ¶ 15, 428 P.3d 265. To the extent Worker asks us to review the WCJ's discretionary decisions concerning the amount of the benefit penalties, our review is for abuse of discretion. *See Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 8, 357 P.3d 463.

**I.      The WCJ's Assessment of Two Benefit Penalties**

{9} Worker first asserts that the WCJ erred by assessing only two benefit penalties—one penalty for unfair claim processing and one penalty for bad faith. We understand Worker to argue that the WCJ should have assessed additional penalties for each of Worker's alleged violations, rather than two penalties "for the myriad bad conduct employer engaged in to affect all aspects of benefits entitlement."

Worker focuses on how many penalties are permitted by Section 52-1-28.1(B)—a question that is not clearly answered by the plain language of the statute and remains unanswered by New Mexico precedent. During oral argument in this case, the parties agreed that Section 52-1-28.1(B) allows for multiple penalties to address separate instances of bad faith or unfair claim processing that occur at different points throughout the life of a workers' compensation case.[1] Nevertheless, even if Section 52-1-28.1(B) authorizes the WCJ to award multiple penalties, Worker has not established that the WCJ erred by declining to award more than one penalty for bad

---

[1]The only appellate court opinion on the topic is this Court's nonprecedential opinion in *Nixon v. Hydrotech Services*, A-1-CA-38511, mem. op. ¶¶ 10-13 (N.M. Ct. App. June 29, 2023) (nonprecedential). There, the WCJ found that the employer committed nine counts of unfair claim processing and the insurer committed six counts, but the WCJ awarded one penalty against the employer and one penalty against the insurer. *Id.* ¶¶ 8, 10. As it was a nonprecedential disposition prepared solely for the benefit of the parties, our opinion did not include a full recitation of the facts, including one that would be important here: whether the WCJ distilled the worker's allegations into two violations regarding the employer's improper claim handing and the insurer's failure to timely pay indemnity benefits, which would be similar to the WCJ's handling of this case. *Nixon* concluded that the worker did not establish that the WCJ erred. *Id.* ¶ 10. In support of that conclusion, this Court offered a tentative interpretation of the plain language of the statute, and observed that the facts of the case made it unnecessary to fully explore the purpose of the statute or to definitively interpret it. *Id.* ¶¶ 11-13. To the extent *Nixon* suggests that the number of penalties available depends on the number of claims (as that term is defined in 11.4.1.7(E) NMAC) affected, rather than the number of separate acts of unfair claim processing or bad faith, *see Nixon*, A-1-CA-38511, mem. op. ¶¶ 11-13, we emphasize that *Nixon* is a nonprecedential memorandum opinion. *See* Rule 12-405(A) NMRA. Further, in light of the arguments in this case, we need not and therefore do not resolve how many penalties are permitted by Section 52-1-28.1(B) as a matter of law.

faith or more than one penalty for unfair claim processing in this case. Specifically, Worker has not challenged the WCJ's findings rejecting Worker's additional allegations of bad faith and unfair claim processing on the merits, and Worker has not established that the WCJ's findings entitle him to more than two penalties.

{10}     In the proceedings before the WCJ, Worker alleged that Employer/Insurer had committed thirty-three separate violations and argued he was entitled to a benefit penalty for each alleged violation. In the WCJ's order, the WCJ grouped Worker's allegations into five overarching categories: (1) selection of HCP, (2) nurse case management, (3) failure to comply with regulations, (4) failure to pay appropriate PPD, and (5) payment of Employer/Insurer's attorney fees in accordance with limitations set by the WCA. The WCJ found Worker was entitled to benefit penalties for (1) and (2), but did not find that the remaining allegations amounted to either unfair claim processing or bad faith.[2] Finally, the WCJ specifically rejected any tendered findings not expressly adopted in his order. *See Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 41, 121 N.M. 353, 911 P.2d 861 ("Failure to adopt a proposed finding of fact is in effect a negative finding with respect to that fact, which

---

[2] Specifically, with respect to (3), the WCJ found that Employer/Insurer substantially complied with 11.4.4.10(B) NMAC, the mediation regulations. With respect to (4), the WCJ found that Employer/Insurer failed to timely pay PPD benefits and unreasonably delayed the payment of benefits, but did not make a specific finding that this conduct amounted to either unfair claim processing or bad faith, as the WCJ had with (1) and (2). With respect to (5), the WCJ found that "Employer/Insurer's attorney was paid correctly."

binds th[e c]ourt on appeal."). Worker has not challenged any of the WCJ's findings on the merits of his claims, and those findings are binding on this Court. *See Baker*, 2018-NMSC-035, ¶ 2.

**{11}** Worker acknowledged during oral argument that a WCJ faced with multiple allegations of bad faith and unfair claim processing has discretion to sort and categorize the allegations as the WCJ did in this case, from thirty-three separate allegations into five categories, so long as the WCJ considers all of the allegations. We understand Worker to contend that, with respect to the two categories for which the WCJ awarded penalties—i.e., (1) selection of HCP and (2) nurse case management—the WCJ's findings might include multiple "violations," which we understand from Worker's briefing to mean actions of unfair claim processing or bad faith; based on that premise, Worker claims he is entitled to additional penalties on a per-violation basis.

**{12}** We disagree that the number of violations described in the WCJ's order is unclear. Worker focuses on the fact that the WCJ entered multiple factual findings for each violation. But it is apparent from the WCJ's order that the WCJ viewed Employer/Insurer's conduct with respect to the HCP selection process to be one violation, and Employer/Insurer's conduct with respect to the nurse case manager to be one violation. The WCJ made clear that it was the totality of the evidence that allowed him to conclude that this conduct amounted to unfair claim processing or

7

bad faith within the meaning of Section 52-1-28.1 and 11.4.1.7(C), (W) NMAC, the regulatory definitions of bad faith and unfair claim processing. We are not persuaded that Worker is entitled to additional penalties in this case simply because the WCJ entered multiple findings describing the conduct that formed the basis of the WCJ's ultimate conclusion that Employer/Insurer had engaged in unfair claim processing and bad faith.

{13}     For these reasons, Worker has not demonstrated that the unchallenged factual findings in this case would entitle him to additional penalties, and for that reason, it is unnecessary for this Court to further construe Section 52-1-28.1(B) with respect to the number of penalties authorized by the statute. *See Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 65, 492 P.3d 586 (stating that judicial guidance on the intended meaning of a term must await the proper case or controversy).

**II.     Common Law and Insurance Code**

{14}     Worker also challenges the WCJ's handling of his common law and Insurance Code allegations, arguing that the WCA allows for Section 52-1-28.1(B) remedies for breaches of duties that are based on the common law and the Insurance Code. We decline to reach the merits of this argument, as our review of Worker's proposed findings and conclusions leads us to conclude that Worker never identified any

8

common law or Insurance Code violation as a basis for a Section 52-1-28.1(B) benefit penalty.

{15}    In Worker's proposed findings and conclusions, Worker presented a generalized discussion of an adjuster's obligations under the Insurance Code, an adjuster's common law fiduciary duty, and the common law duty of good faith and fair dealing. Worker did not request any specific finding(s) related to the adjuster's handling of his claim in this case. Worker's proposed findings and conclusions also contained a list of thirty-three alleged violations that, he claimed, entitled him to remedies under Section 52-1-28.1(B), but it is not apparent from the face of the enumerated violations that any relate to either a breach of the Insurance Code or Employer/Insurer's common law duties. None of the proposed violations clearly or expressly reference any Insurance Code provision or the common law. Instead, all of the alleged violations identify the basis for the violation in either the WCA, its attendant regulations, case law interpreting the WCA, or the WCJ's orders.

{16}    On appeal, Worker offers generalized arguments as to why this Court should accept violations of the common law or Insurance Code as a basis for Section 52-1-28.1(B) remedies. But Worker has not identified what conduct he contends amounted to a violation of any duty outside the WCA. Specifically, Worker has not directed us to any evidence presented below, or any findings or conclusions he requested, addressed toward common law or Insurance Code violations. It appears

from the record that Worker never invoked a ruling from the WCJ on the merits of this issue. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). With this context in mind, we will not disturb the WCJ's conclusion that "Worker's reliance on the common law in his proposed findings of fact and conclusions of law is misplaced." *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (providing that "on appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue," and "[a]bsent that citation to the record or any obvious preservation, we will not consider the issue").

## III. The Penalty Calculation

{17} We now turn to Worker's contention that the WCJ erred in calculating the benefit penalty amounts in this case. The penalty calculation is governed by Section 52-1-28.1(B), which provides that a benefit penalty assessment shall be awarded if unfair claim processing or bad faith has occurred, in an amount "not to exceed twenty-five percent of the benefit amount ordered to be paid." The penalty assessment thus requires the WCJ to make two determinations: (1) the basis for the award, which is by statute the "benefit amount ordered to be paid" (hereinafter, BAOP); and (2) the penalty amount, which is discretionary but limited by a statutory ceiling of no more than twenty-five percent of the BAOP. *See* § 52-1-28.1(B).

Worker's appeal focuses on what the BAOP means generally and how it was calculated in this case.

{18} Worker asserts that the BAOP means benefits ordered by a compensation order. We agree with Worker on this point. The plain language of Section 52-1-28.1(B) indicates that benefits ordered in the WCJ's compensation order(s) provide the basis for calculating a benefit penalty. We also agree with Worker that the benefit penalties awarded in this case were not based on benefits awarded in any compensation order, and for that reason we reverse the benefit penalty awards and remand to the WCJ for recalculation of the benefit penalty awards.

{19} The WCJ explained that he was presented with competing options for calculating the benefit penalty. Worker requested that the benefit penalty be calculated as a percentage of the entire value of all benefits awarded during the pendency of his case (excluding future medical benefits)—approximately $322,000, according to Worker's brief on appeal. The WCJ rejected this proposal in favor of Employer/Insurer's calculation, which was based on a clear and quantifiable number, but one not included in any compensation order.

{20} Employer/Insurer's calculation was based on the value of *PPD* benefits it claimed Worker should have received from October 15, 2017, to January 16, 2019, a period of sixty-seven weeks. During this period, Employer/Insurer paid Worker $9.34 in PPD benefits per week. Employer/Insurer proposed that Worker's PPD

11

payment should have included an additional modifier in the amount of $280.28 per week, or $18,778.76 over sixty-seven weeks. Employer/Insurer also proposed that the benefit penalty should be up to twenty-five percent of $18,778.76, or $4,694.69. Yet, as discussed above, the WCJ determined in the first compensation order, entered on February 22, 2019, that Worker was not at MMI during this period and was therefore entitled to *TTD* benefits in the amount of $499.97 per week dating back to September 11, 2017, and continuing until Worker reached MMI. Based on the benefits ordered in the WCJ's compensation orders, the issue with Employer/Insurer's calculation is clear: no compensation order awarded PPD benefits from October 2017 to January 2019. Accordingly, the benefit penalty awards in this case were not calculated in accordance with Section 52-1-28.1(B), and we must conclude that they are an abuse of discretion. *See Carrillo v. Compusys, Inc.*, 2002-NMCA-099, ¶ 6, 132 N.M. 710, 54 P.3d 551 ("[W]e may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." (alteration, internal quotation marks, and citation omitted)).

{21}     Because the WCJ will need to revisit the benefit penalty calculation on remand, we address Worker's additional argument that, based on the plain language of Section 52-1-28.1(B), the BAOP must be the value of all benefits ordered to be paid during the course of the workers' compensation suit, either as a matter of law or specifically based on the facts of this case. In support, Worker relies on language

12

in *Cruz v. Liberty Mutual Insurance Co.*, 1995-NMSC-006, ¶ 14, 119 N.M. 301, 889 P.2d 1223, where our Supreme Court discussed the adequacy of the remedy provided by Section 52-1-28.1. In *Cruz*, the workers' compensation insurance carrier paid for an injured worker's medical treatment after a work accident, and "[n]either [the worker] nor his employer filed any claim or petition in the Workers' Compensation Administration" until the worker and the insurer entered into a settlement agreement for a lump sum payment and payment of future medical benefits for a limited time. *Id.* ¶ 2. After the Workers' Compensation Administration approved the settlement, a dispute arose about the payment of future medical benefits. *Id.* ¶¶ 2-3. The worker filed suit in district court alleging "fraud, bad faith, breach of contract, breach of the insurance code, civil conspiracy, invasion of privacy, negligent misrepresentation, and racketeering." *Id.* ¶ 4. The district court dismissed the suit for lack of subject matter jurisdiction, and the Supreme Court affirmed, holding that the WCA provides an exclusive remedy for bad faith claims. *Id.* ¶¶ 6-7. The Court also rejected the worker's argument that Section 52-1-28.1 does not provide adequate relief, *Cruz*, 1995-NMSC-006, ¶ 13, observing that "[u]nder Section 52-1-28.1[(B)], the employee receives all compensation for benefits due and owing and shall receive an extra benefit penalty of up to twenty-five percent of *the claim*." *Cruz*, 1995-NMSC-006, ¶ 14 (emphasis added) (internal quotation marks omitted).

{22} Worker focuses on the emphasized language and argues that *Cruz* stands for the proposition that the BAOP must be "the entire value of the claim," i.e., the value of all benefits ordered to be paid during the course of the workers' compensation suit. We do not read *Cruz* to stand for such a general proposition. *Cruz* involved a single compensation order that resolved all aspects of the worker's past and future benefits. The Court was not asked to consider whether, in a case involving multiple compensation orders, the combined value of all benefits conferred by the orders should be used as the basis for the benefit penalty calculation. Moreover, *Cruz* focused on the adequacy of the statute's remedy, not its application. *Id.* ¶¶ 13-14. Nowhere in *Cruz* did the Court consider how to calculate a benefit penalty or the meaning of BAOP. *See Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("[C]ases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

{23} It appears no precedential New Mexico case has provided any bright-line rule for how to determine the BAOP, and the statute itself does not provide an apparent answer, particularly for circumstances such as this. In full, Section 52-1-28.1(B) reads: "If unfair claim processing or bad faith has occurred in the handling of a particular claim, the claimant shall be awarded, in addition to any benefits due and owing, a benefit penalty not to exceed twenty-five percent of the benefit amount ordered to be paid." The first phrase in the statute indicates that the penalty is tied to

14

bad acts that occur in the handling of a particular claim, but the statute is not clear as to what "claim" means in this context. "A particular claim" could be construed to mean, for example, (1) a worker's claim for a particular type of benefit provided by the WCA, (2) any benefits resolved by a particular compensation order, or (3) a particular *worker's* claim for benefits, as opposed to other claims against the same employer or insurer. Likewise, Section 52-1-28.1(B) ties the statutory cap on the benefit penalty to "the benefit amount ordered to be paid." "The benefit amount" in this context could be read as both singular and plural, meaning that it could be construed to mean, for example, (1) the amount of a particular type of benefit (i.e., TTD, PPD, or medical treatment), (2) the benefit amount ordered in a particular compensation order, or (3) the aggregate benefit amount ordered throughout the life of the case, which Worker advocates for. These ambiguities prevent us from adopting any definitive construction based simply on the plain language of the statute. The only conclusion we can draw from the plain language of the statute is that it neither clearly requires nor clearly prohibits use of the aggregate benefit amount as the basis for a penalty award.

{24}    In this case, the WCJ appears to have attempted to determine the BAOP by quantifying what benefits were delayed. The specific arguments made by Worker on appeal do not establish that this would have been an inappropriate consideration had the BAOP been based on an amount of benefits that actually had been ordered in a

15

compensation order. We observe, however, that while "unfair claim processing" appears to require unreasonable delay or the prolonging of payment of benefits at a rate not consistent with the act, *see* 11.4.1.7(W) NMAC, "bad faith" does not, *see* 11.4.1.7(C) NMAC. Bad faith is by definition more egregious conduct, and such conduct may not be clearly tied to a delay in benefits. *See* 11.4.1.7(W) NMAC (stating that "'[u]nfair claims processing' is a less severe violation than 'bad faith'"). When the conduct amounts to bad faith, Worker argues that the statute will only serve its purposes of securing benefits for the worker, penalizing the employer, and deterrence, if the aggregate benefit amount is used as the basis for the calculation. *See Cruz*, 1995-NMSC-006, ¶ 14. Even if this might be appropriate in some cases, Worker has not established based on the plain language of the statute that the aggregate benefit amount is the appropriate basis in every case, regardless of the specific circumstances. Because the ambiguity in the statute has not been addressed further by the parties, we decline to reach the remaining questions of statutory interpretation. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments.").

{25}     Finally, even though we have rejected Employer/Insurer's calculation and declined to adopt Worker's proposed plain-language definition of BAOP based on

16

our conclusion that Section 52-1-28.1(B) is ambiguous, we emphasize that we are not directing the WCJ to adopt a particular calculation on remand. Worker maintains that the benefit penalty for both the unfair claim processing and bad faith should be calculated based on benefits awarded under both compensation orders because he placed all of his benefits in dispute. Employer/Insurer acknowledged at oral argument that there are instances where a WCJ may award a penalty against the full amount of the benefits ordered, such as in the case of a complete denial of benefits in bad faith, but argues this approach is not appropriate under the facts of this case. It is for the WCJ to resolve these competing points of view on remand.

**CONCLUSION**

{26} For the above and foregoing reasons, we reverse the WCJ's benefit penalty awards and remand this case to the WCJ to determine the appropriate benefit amount ordered to be paid and penalty percentage under Section 52-1-28.1(B). We otherwise affirm.

{27} **IT IS SO ORDERED.**

_____
**MEGAN P. DUFFY, Judge**

17

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Judge**

_____
**ZACHARY A. IVES, Judge**